[S. F. No. 1731.   Department One.—November 10, 1900.]

## EMMA S. STOUT, Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA, Appellant.

ACCIDENT INSURANCE—DEATH THROUGH EXTERNAL AGENCY—EVIDENCE.— In an action upon a policy of accident insurance, conditioned upon the death of the insured happening from "bodily injuries sustained through external, violent, and accidental means," a verdict in favor of the plaintiff will not be disturbed on appeal on the ground that it is not supported by the evidence, if the evidence is conflicting as to whether the death resulted from a disease of the heart, or as the result of a blow on the head of the insured, occasioned by the capsizing of a rowboat in which he was riding within an hour of his death.

ID.—WEIGHT OF EVIDENCE.—The conflicting testimony as to the immediate cause of the death, including the inherent improbability of the truth of a witness who testified to the reception of the blow, is a matter for the jury to weigh and determine.

ID.—CHARACTERISTICS OF BLOW CAUSING DEATH.—A witness present at the time of the infliction of the blow on the insured may be asked to describe its apparent characteristics and as to whether it was a light or a heavy blow.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

M. B. Kellogg, for Appellant.

Van Ness & Redman, for Respondent.

GAROUTTE, J.—This is an action upon a policy of accident insurance.   By said policy the defendant promised that it would pay the plaintiff the sum of two thousand dollars in the event of the death of her husband resulting from "bodily injuries sustained through external, violent, and accidental means." The husband died and the question upon this appeal is, Did he die from "bodily injuries sustained through external, violent, and accidental means"?   The verdict of the jury declares that he died through such means, and the insurance company insists that the evidence is not sufficient to support the verdict.

The substantially conceded facts are these: The deceased and his son, a boy of seventeen years of age, were in a small boat upon the bay of San Francisco. Owing to adverse winds and tides they were unable to make land and hailed a passing launch, which gave them assistance by undertaking to tow them to a place of safety. The tow-line was too short, and the launch, in making a turn, caused the smaller boat to capsize. At that time the boy was in the center of the boat and the deceased sitting at the stern. As the boat tipped the boy fell into the water, and the father reached to save him. Owing, possibly, to the speed of the launch, the boat turned a complete revolution, and when it came right about, the deceased was lying in the bottom unconscious. He was then placed upon the launch, taken ashore, and within an hour the doctors pronounced him dead.

The coroner's inquest resulted in a verdict of death from disease of the heart. Certain physicians and surgeons who held an autopsy testified that, in their opinion, disease of the heart was the cause of death, and they further testified that the heart was badly diseased. Other physicians and surgeons testified directly to the contrary, and to the effect that disease of the heart was not the cause of death, and that the heart was not diseased. The son testified that as the boat turned over, and as his father reached to save him, he (the father) was struck upon the head by the row-locks a medium heavy blow. In support of this testimony two abrasions of the skin upon the head were found. The evidence being squarely conflicting as to the defective or nondefective condition of the heart of deceased, this court is bound to assume that it was in a normal condition. Reduced to a minimum, we then find the evidence to be that a man in the full vigor of life is capsized from a boat, and at the same instant struck upon the head by the row-locks a medium heavy blow; in a few minutes of time thereafter he is picked up unconscious, and within an hour is dead. Upon this meager evidence we should be strongly inclined to hold that a *prima facie* case of accidental death was proven. But in addition to this, we have certain evidence of experts to the following general effect:

"Q. Assume a boat in the bay of San Francisco, with a heavy

sea, and a strong wind blowing. This rowboat is attached to a launch by a painter or rope; the boat is being drawn through the water by the launch, when it suddenly starts to turn over. The man is seated in the stern of the boat, and the boy is seated in the middle of the boat. As the boat starts to turn over, the man throws himself forward or reaches forward to stop the boy from falling out of the boat; and as he goes forward the boat goes over; and in this condition he is struck in the temple by the row-locks of the boat; and then the boat, continuing its motion, swings completely over in the water, and comes up on the other side. Could death be caused by a blow of that character? A. I will say. yes. Q. What would you say caused the death? A. It might be different things. A man receiving a blow like that might rupture the meninges of the brain, producing paralysis and unconsciousness, and perhaps die from that; or cerebral apoplexy, perhaps, from a rupture of a blood vessel, would possibly cause death. That is not unusual. Q. What would you say was the cause of death in connection with that physical happening? What occurred there that would cause death? A. I would say it was cerebral apoplexy, perhaps. Q. What would have caused cerebral apoplexy? 'A. The injury he received from the blow. Q. Would you say it was the blow that caused the death? A. It might have been hemorrhage or apoplexy or rupture of the blood vessels of the brain." Taking all the evidence together we are satisfied it is sufficient to support the verdict of the jury.

Defendant expressly attacks the probability of the truth of the son's evidence, wherein he testifies that his father's head was struck by the row-locks. Counsel insists that the surrounding conditions at the moment of the overturning of the boat render the evidence of the son unworthy of belief, and absolutely indicate that no blow could have been received by deceased. We will not follow defendant's technical analysis of the various phases of the evidence, in order to disprove his contention in this respect. It is sufficient to say that we see no physical impossibility arrayed against the truth of the testimony of the boy regarding the blow. The testimony to this point was essentially a matter for the jury to weigh and analyze; and it is only in an exceptional case that this court feels

justified in finding contrary to its decision, and this is not that case.

Objection was made to the following question: "Q. Describe to the jury as to that blow, whether it was a light and easy blow, or whether it was a strong and heavy blow, or whether it was a medium heavy blow, according to your idea as you saw it." The foregoing question was clearly proper. (*Robinson v. Exempt Fire Co.*, 103 Cal. 4[1]; *People v. Chin Hane*, 108 Cal. 602.) We find nothing in the rulings of the court upon the admission of other evidence that demands a reversal of the judgment. We likewise find the charge of the court full and fair.

For the foregoing reasons the judgment and order are affirmed.

Van Dyke, J., and Harrison, J., concurred.