[Civ. No. 5763.   Fourth Dist.   Dec. 15, 1958.]

AURORA GUILLEN et al., Respondents, v. J. NEEDHAM MARTIN, Appellant.

Swing & Swing for Appellant.

Collins & McKenna for Respondents.

174

SHEPARD, J.—■ Plaintiff-respondent Aurora Guillen (hereinafter called plaintiff) on July 2, 1954, consulted defendant-appellant Dr. J. Needham Martin (hereinafter called defendant) with an abdominal complaint that ultimately led to a diagnosis of cholelithiasis and a cholecystectomy, or surgery for removal of the gall bladder, on August 6, 1954. Defendant performed the surgery with the assistance of other doctors and nurses.

This was the plaintiff's first abdominal surgery in the area of the biliary ducts. The biliary duct system is composed of the right and left hepatic ducts which attach to and come directly out of the liver, to join together in the common hepatic duct which proceeds for about four centimeters to where it is joined by the cystic duct which connects with the gall bladder. The cystic duct itself is about four centimeters in length. From the point where the cystic duct joins the common hepatic duct the name "common bile duct" is applied until it reaches its ultimate destination about eight centimeters away at the duodenum, which is that portion of the digestive tract attached directly to the stomach. The function of the bile thus carried into the duodenum from the liver and the gall bladder is primarily to aid in the digestive functions. When the gall bladder becomes diseased it is sometimes found necessary to remove it. This is done by severing the cystic duct, removing the gall bladder, and suturing the end of the cut duct which is closest to its juncture with the common hepatic duct, so that the cystic duct becomes permanently sealed off and entirely inoperative. If the common duct or common hepatic duct should be severed and both of the severed ends ligated, the end closest to the duodenum will gradually atrophy and contract through disuse. The ligation of the end closest to the liver will cause the liver-produced bile to back up into the liver itself, causing the liver to swell and gradually disseminate its bile into the bloodstream with resulting severe jaundice and ultimate death unless the back pressure is relieved. If the ligation in this portion of the common bile duct slips off, the liver continuing to function will discharge its bile directly into the peritoneal cavity causing severe inflammation of those organs that it reaches, with resulting peritonitis and ultimate death unless prompt action is taken to correct the situation. In a cholecystectomy the operating surgeon is aware of all these things and knows that one of his primary needs is to expose and identify the cystic duct, the gall bladder, and the common hepatic and common

duct, and to closely guard against severance of the common hepatic duct or the common bile duct. All of these things were also well known to defendant, and he testified that he did take such precautions.

After the operation plaintiff continued to suffer pain, developed fever, inability to retain food, abdominal distention, and absence of natural bowel movement during the entire stay in the hospital until she was discharged. On August 15, she was discharged from the hospital but continued to suffer, complained to defendant, was readmitted to the hospital, and was treated for bile peritonitis due to leakage of bile into the peritoneum. Defendant called in a consulting physician and performed another surgery of an exploratory character (laparotomy), but due to plaintiff's poor physical condition did not expose the biliary tract (area around the liver and bile ducts), but did institute drainage; large amounts of bile-like fluid were drawn from the abdominal tract. Her condition worsened to the critical stage and on September 10, at her own request, she was removed to another hospital and employed another doctor (Wetrich).

Doctor Wetrich also removed substantial amounts of bile-like fluid from the abdominal tract, instituted further drainage, and after a month-long body building process to sufficiently strengthen her that she could again endure a major operation, opened the biliary tract to view and ultimately discovered that the common bile duct had been severed and at least partly ligated; that bile was leaking from it into the peritoneal cavity; that one catgut tie was lying loose and unattached near the severed end of the common bile duct closest to the liver, which catgut tie was involved or imbedded in scar tissue. It was found that the common hepatic duct had been severed about two centimeters away from the juncture of the right and left hepatic ducts; that portion of the common hepatic duct where the cystic duct joins was missing; the severed end of the common hepatic duct was then joined to the severed end of the common bile duct (an anastomosis). This operation was performed about October 13, 1954. A drainage tube was inserted and remained sticking out of her abdomen until May of 1955, during all of which time she suffered some pain, discomfort and inconvenience, but gradually recovered.

Thereafter, an action for damages was brought by plaintiff against defendant and others. Upon trial, a verdict and judgment went for plaintiff against this defendant alone in

the sum of $29,423.64. Since plaintiff proved special damages of $4,423.64 it would appear that the jury awarded $25,000 general damages.

The defendant complains that the award of damages was excessive. The trial court, on proper motion, has the duty of weighing the evidence and making such adjustment as appears proper if it believes the verdict to be excessive. (*Gardner* v. *Marshall*, 56 Cal.App.2d 62, 66 ■ [132 P.2d 833].) It did not do so. On appeal, this court can only pass on the question of whether or not the verdict was, as a matter of law, excessive. After examining all the evidence we cannot say as a matter of law the $25,000 was so excessive as to require intervention by this court.

■ Defendant next contends that the evidence is insufficient to support the implied finding of the jury that the defendant severed the common biliary duct, and that there were strong symptoms of this fact during defendant's postoperative attendance on plaintiff, from which defendant should in the exercise of ordinary precaution have known that some sort of repair or at least a laparotomy was necessary. A reading of the entire medical evidence, including testimony relating to plaintiff's postoperative experience of fever, continued pain, accumulation of bile, drainage and flushing procedures found necessary, general physical deterioration, the finding by Dr. Wetrich of the severed parts of the common bile duct, with a loose catgut tie involved in the scar tissue, the end closest to the liver with that end not ligated but leaking bile directly into the peritoneal cavity, the other end or one closest to the duedenum being ligated; the fact that all evidence can well be interpreted to mean that the defendant was the only person performing any surgery on any of the bile ducts prior to the discovery by Dr. Wetrich of the severed bile duct, furnishes sufficient evidence in our opinion for the jury to conclude that defendant did, in fact, sever the common bile duct; that there were sufficient postoperative symptoms to cause an alert physician to believe that more than normal leakage of bile was occurring into the abdominal cavity; and that an exploration of the area of the bile ducts was immediately necessary to determine the cause of these symptoms.

■ "A defendant's conduct must always be gauged in relation to all the other material circumstances surrounding it,.and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved

as a matter of fact rather than of law. [Citing cases.] (*Seneris* v. *Haas*, 45 Cal.2d 811, 823 [4] [291 P.2d 915, 53 A.L.R.2d 124].)

■ ''When an appellate court is confronted with the question of the sufficiency of the evidence, its only duty is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support the finding and judgment.'' ■ The question of the credibility of witnesses is one for the trier of fact. (*Anglin* v. *Conway*, 41 Cal.2d 683, 688 [3] [2] [263 P.2d 1].)

■ The defendant also contends that there was no basis for the application of the rule of res ipsa loquitur.

■ ''The conditions required for the application of the doctrine are: (a) There is a basis of experience, either common to the community or brought out in evidence, from which it may reasonably be concluded that the accident is of a kind which does not normally occur unless someone has been negligent. (b) It must be caused by an agency or instrumentality within the exclusive control of the defendant. (c) It must not have been due to any voluntary action or contribution on the part of the plaintiff. [Citing cases.] (*Bauer* v. *Otis*, 133 Cal.App.2d 439, 443 [284 P.2d 133].)

■ It is our opinion that it would not be an unreasonable interpretation of all the evidence and circumstances of this case for the jury to believe that this accident is one that does not normally occur unless someone has been negligent. The defendant was in exclusive control of the surgery, the plaintiff was unconscious, there is no evidence whatever that she contributed in any way, voluntarily, to the injury. The question of the credibility of witnesses was in the first instance one for the jury, and on motion for a new trial one for the trial judge.

■ The defendant complains that the trial court should not have instructed the jury that

''If, and only in the event, you should find that there was an accidental occurrence as claimed by plaintiffs, namely, that the common hepatic bile duct or the common bile duct of plaintiff Aurora Guillen was cut and tied off during the cholecystectomy or gall bladder operation of August 6, 1954, and that the fact of such cutting and tying off was not recognized by those defendant physicians who were in attendance at that time; and if you should find that from that accidental event, as a proximate result thereof, plaintiff Aurora Guillen has suffered injury, you are instructed as follows: an inference

arises that the proximate cause of the occurrence in question was some negligent conduct on the part of those defendants. ...

In this cause the record shows that extensive instructions were given by the court covering every phase of the application of the rule of res ipsa loquitur to this case. Most of these instructions were given at the request of the defendant, and a review of the instructions shows that, taken as a whole, the jury was fully and fairly instructed on the subject and any advantage that can be found in the instructions is on the side of the defendant rather than that of the plaintiff. Any instruction standing alone may be insufficient. The question of whether or not the defendant did, in fact, cut the bile duct was left to the decision of the jury, and the effect of the mere inference of negligence was carefully explained to the jury. ". . . [I]nstructions must be read together and harmonized." (*Bates* v. *Newman*, 121 Cal.App.2d 800, 807 [264 P.2d 197].)

It appears to us that the case was fully and fairly tried, that the complained-of rulings and instructions were proper and not unfair. While it is perfectly true that a different court or a different jury might have arrived at a different result, we cannot say that the result that was arrived at was beyond the realm of ordinary reason or outside the law.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.