[Civ. No. 6198. Fourth Dist. July 26, 1960.]

GENE M. WARREN, Appellant, v. PACIFIC INTER-
MOUNTAIN EXPRESS COMPANY (a Corporation)
et al., Respondents.

MILAN M. MAZAK, Appellant, v. PACIFIC INTERMOUN-
TAIN EXPRESS COMPANY (a Corporation), et al.,
Respondents.

156

Stennett & Hamman and John L. Stennett, Clodfelter, Graves, Hewins & Marsh and Robert R. Clodfelter for Appellants.

McInnis, Focht & Fitzgerald and William T. Fitzgerald for Respondents.

GRIFFIN, P. J.—In these two cases, consolidated for trial and on appeal, plaintiff and appellant Gene M. Warren sought judgment against defendants and respondents Pacific Intermountain Express Company, a corporation, and Warren H. Lawrence, in case Number 214912. Plaintiff and appellant Milan M. Mazak sought judgment against the same defendants and respondents in case Number 215229 for general and special damages arising out of a collision on February 28, 1957, at about 2 p. m. on Highway 80, approximately 5 miles east of Alpine on the Viejas Grade in San Diego County. It was alleged, and admitted in the pretrial order, that plaintiff Mazak was operating a motor vehicle (Nash) uphill in an easterly direction and plaintiff Warren was riding therein, and that a collision occurred between that vehicle and an empty tank-truck and trailer (overall length about 60 feet) owned by defendant corporation and driven by defendant Lawrence in a westerly direction down a 6 to 7 per cent grade.

It is conceded that defendant Lawrence was an employee of defendant corporation and acting in the course of his employment at the time of the accident. Defendants denied any negligence on their part and alleged plaintiff Warren was a passenger and not a guest and that each was guilty of contributory negligence and that each assumed the risk. A jury trial resulted in a verdict for defendants. Plaintiffs appealed from the judgment that followed.

The principal questions here raised pertain to the rulings of the trial court in sustaining objections to the admission of certain evidence and the giving and refusal to give certain instructions.

The highway, at the point of impact, consisted of two 10-foot wide concrete traffic lanes with a double white center line. The asphalt shoulders on each side were approximately 8 feet wide. Signs reading "Down Grade—Trucks use low gear," "Curves" and "Slow to 30 miles" were erected for the benefit of westbound traffic on the grade. The curve of the road on the grade at the point of collision was described as an overall angle of 92 degrees plus. From the exhibits in evidence, the roadway

appears to run practically in a straight line in both directions from where the collision occurred, but a short distance (one block) to the east it curves first to the north and then back to a general east-west direction. Approximately one block west of the point of impact it again curves to the north and then back again to a general east-west direction. It was described as ''Dead Man's Curve.'' The pavement was wet. Apparently the front of the Nash car passed the front truck and collided with the left rear portion of the tank trailer, knocking the rear dual wheels of the tank trailer loose from the spring hanger and knocking the wheels out from under the trailer. The main issue of fact at the trial was whether the tank trailer jackknifed over to plaintiffs' eastbound side of the road, causing the accident, or whether the plaintiffs' automobile had crossed over the double center line and struck the trailer in the westbound lane.

Both plaintiffs testified that the tank trailer swung over into their eastbound side of the road, covering to a great extent that lane, and that the point of impact was in that lane. There was a conflict as to the speed of the truck and trailer, ranging from 20 to 42 miles per hour, and a conflict as to whether certain gouge marks in the pavement indicated the tank trailer was in the westbound lane or the eastbound lane at the time of the collision. The truck left about 229 feet of skid marks, which the witnesses believed were in the north or westbound lane. Several gouge marks were indicated on the north side of the lane. The first one, about 6 inches in length, was located in the north lane about midway between the center double line and the north shoulder. Eighty-one feet of gouge marks extended farther west in that lane near and on the north shoulder and continued on to where the truck was finally parked on the north shoulder of the north lane. The rear wheels and axle of the trailer were found against the north bank just off the north shoulder where the first gouge marks were located. One witness placed a gouge mark as starting just south of the center line and extending west down the north lane. Debris was scattered near the middle of the highway, with the majority of it located in the north lane. Some was found in the eastbound lane.

Plaintiffs admitted having consumed some beer sometime prior to the accident and six beer cans, two empty and four unopened, were found in the Nash car. The claim of defendants on this appeal is that plaintiffs had attempted to

"straighten out the curve" by cutting across it and had misjudged their position on the highway and collided with the rear of the tank trailer. There was evidence of scratch marks along the side of the tank trailer and evidence that plaintiffs' automobile had collided head-on with the left rear tires of the tank trailer. Apparently the jury found in favor of defendants on the issue as to the position of the respective vehicles on the highway at the time and we are bound by the familiar rule with reference to conflict of evidence. (*Guillen* v. *Martin*, 166 Cal.App.2d 172, 177 [333 P.2d 266].)

Plaintiffs alleged in their complaint that defendants negligently operated, maintained and drove the truck and trailer so as to cause it to strike and collide with the Nash car.

Plaintiffs claim error by the trial court in sustaining objections to questions propounded to defendant Lawrence, called as plaintiffs' witness under section 2055, Code of Civil Procedure, pertaining to the condition of the truck and trailer brakes shortly prior to the happening of the accident. He had just testified that a few days prior to the time of the accident he had had trouble with the brakes "hanging up" but after repairs were made and prior to the happening of the accident he did not remember having any such trouble. A question was then propounded as to whether the witness knew the difference between a 6-inch brake and a 7-inch brake on trailers and he replied that they have different size brake shoes and different size brake drums. He was then asked if the larger brake had more braking power. An objection on the grounds of irrelevancy was sustained and an unreported conference at the bench ensued. Counsel for plaintiffs then remarked, "Well, we will, for the time, skip that." Later on and after further questioning, he was asked if the truck had been in the yard for repairs prior to the accident and he answered, "Yes." He was then asked as to what the condition of the equipment was on the day of the accident and he replied, "In good shape. The steering apparatus and brakes on both truck and trailer were good." He was then asked if it was not true that shortly before the accident happened (about one week) he "had recommended to the company . . ." Objection was then made as being irrelevant because there was no showing of any proximate relationship between that and the accident. The court, in sustaining the objection, stated ". . . it is my present notion that the evidence, so far, shows that the operator of the plaintiffs' automobile was suddenly confronted by the tank trailer on the wrong side of the highway; that there was not time to

avoid striking the trailer and that the front of the automobile collided with the rear wheel assembly of the trailer. In that state of the evidence, the question of brakes appears to the court to be immaterial in that whether the brakes operated smoothly or not does not appear to have any causal connection with the collision . . . I make this explanation so that, if there is any evidence produced which would indicate that the efficiency of the brakes of the tank and trailer, or the lack of efficiency, had any probable causal connection, I would then, want to change the ruling because I am not seeking to arbitrarily prevent you from showing; but I feel that evidence which would tend to indicate to the jury that there had been some complaint about this vehicle and trailer would be prejudicial and perhaps misleading.'' Plaintiffs' counsel then made some form of offer of proof, stating, ''. . . it would be shown that the last time the truck was in the yards for repairs prior to the accident was on February 2, 1957; that on February 21, 1957, one week before the accident, the truck driver on his trip report recommended to the company, over his signature, that a six inch of brake, on one of the trailer wheels, be taken off and a seven inch brake placed back on.'' The court sustained the objection to the offer and added the words, ''. . . in the present state of the record.'' It was then stipulated that the foundation for the admission of certain trip and repair records for one year prior to the accident and for six months thereafter, which were obtained from the defendants by plaintiffs' counsel, was sufficiently laid under section 1953, subdivision (f) of the Code of Civil Procedure in reference to business records of defendant corporation. Relevance was not included in the stipulation. These records were bundled together and marked as one exhibit for identification. Plaintiffs' counsel then offered them in evidence en masse. Objection was again made on the same grounds, and that there was no causal connection shown and that it was too remote. Counsel for plaintiffs then recited that if the records were received they would disclose the repairs that were made on this truck and trailer for over one year; that it would show the comments of various drivers as to what was wrong with the truck on the several trips made over that period; that during that period it would show 33 occasions when there was something wrong with the brakes and a continuous lack of proper maintenance. Counsel for defendants objected and stated the records speak for themselves and would not disclose the matters related. The court sustained the objection to the offer of proof and again

162

related that there had been no sufficient showing up to that time of a causal connection.

It is plaintiffs' argument that these records were admissible by way of impeachment of the testimony of the truck driver and also that they would tend to prove the allegations of the complaint that the truck was not properly maintained. If they were to be used for impeachment purposes, it is quite apparent that a proper foundation was not laid for the purpose. (Code Civ. Proc., § 2052; 54 Cal.Jur.2d 612, § 179.)

Plaintiffs produced no testimony, either by lay or expert witnesses, that the accident was caused by faulty brakes or other faulty maintenance of the equipment at the time the offer was made. None was produced thereafter and no other offer was made to admit the exhibit or any portion of it in evidence. It did contain many repair requests on many different occasions that could in no wise contribute to the cause of this accident, such as "Heater won't work" . . . "Exhaust leaking" . . . "Temp. gauge broken." On the other hand, some indicate "Cannot steer this rig" . . . "Steers hard and wanders all over the road" . . . "Brakes grab" . . . "trlr out of line—follows 4 inches to the left." Most of the remarks referred to the truck as distinguished from the trailer. It might well appear that the repairs indicated were made. However, plaintiffs contend that the reappearance of such conditions several weeks apart might well indicate that they were not repaired or were not repaired properly.

It is true, as indicated by the trial judge, that the recommendation of the driver that the size of the brake lining on the trailer be enlarged from 6 inches to 7 inches was not shown to have any causal relationship as to the trailer being on the wrong side of the road, as indicated by plaintiffs' testimony. Had plaintiffs first shown some relationship between the cause of the accident and the repairs indicated which would tend to show the condition of the truck and trailer at that time, such evidence might well have been received. (*Stickel* v. *San Diego Electric Ry. Co.*, 32 Cal.2d 157, 162 [195 P.2d 416].)

■ It is the rule that if a general offer is made to prove a number of things, without segregation, and it includes some inadmissible matter, the entire offer may be rejected. (*Lewis* v. *Western Truck Line,* 44 Cal.App.2d 455, 465 [112 P.2d 747]; *Swafford* v. *Board of Education,* 127 Cal. 484 [59 P. 900].) ■ Where the court properly excludes documentary evidence for lack of connecting it up with the issues involved, failure to produce that evidence and to renew the

offer is a waiver of the error. (*Ford* v. *Carew & English*, 89 Cal.App.2d 199, 206 [200 P.2d 828]; *Spanfelner* v. *Meyer*, 51 Cal.App.2d 390 [124 P.2d 862].) As will be noted, the trial court did not hold that the evidence was inadmissible, but rather that it was inadmissible until evidence of causal connection was established. Under these circumstances, no prejudicial error can be claimed.

 Plaintiffs next complain in reference to the refusal of the trial court to admit in evidence a statement of defendants' counsel elicited by interrogatories from plaintiffs under section 2030, subdivision (a) of Code of Civil Procedure, wherein, prior to trial, they sought information of said attorney as to whether the speedograph or tachograph on defendants' truck, at the time of the accident, was in good operating condition. The answer was that ''It is defendants' present opinion that said speedograph was in good operating condition at the time described therein.'' It is plaintiffs' contention that this question and answer operated as a stipulation or admission of defendants that it was so operating and could be used to impeach or contradict certain testimony of an expert witness, called by plaintiffs, who had described this instrument in evidence to the jury, told how it functioned and said that it indicated a top speed of 42 miles per hour just before the collision. But, this witness, on cross-examination, testified that the width of the hairline represented a substantial number of seconds in reference to stopping distance and that it could not accurately portray stopping time. It is this latter statement which plaintiffs desired to refute on the theory defendants' counsel was, at the time he made the statement, of the opinion that the speedograph was in good operating condition. We see little merit to this contention. It is quite apparent that the fact that this machine would not accurately register the stopping distance was not due to any defect in the machine but to inability to determine, with any degree of accuracy, the stopping distance. Its purpose was to determine the various speeds obtained by the truck at different times and the duration of stopping periods. It appeared to be working normally for the purpose intended. Even if admissible, the refusal to admit the statement would not constitute prejudicial error, particularly where its operation and purpose and the lines recorded thereon were fully explained to the jury.

 Next, plaintiffs argue that a witness (called by defendants), a garage owner, who was summoned to the scene of

the accident to tow in the trailer and who examined the trailer, truck, Nash car and highway in detail, was not sufficiently qualified as an expert to answer the question propounded by defendants' counsel as to whether or not it would be possible for the rear wheels of the trailer to be knocked out from under the trailer by a broadside blow, as contended by plaintiffs, where the wheels were found back up the highway on the north side of the westbound lane, particularly where, as seen by him, the strut and rear hanger were bent straight back toward the rear of the trailer. Over objections that no foundation was laid and it called for a conclusion, the witness answered he did not believe so. Over the same objection, he stated that in his opinion an angle of at least 25 to 30 degrees existed between the car and the trailer at the moment of impact.

Plaintiffs' counsel claims on cross-examination that he discovered the witness had no education in physics or chemistry nor any special training in metallurgy and forces of impact and was incompetent to testify.

The witness did testify that he had been in the general garage business and "going on wrecks" for 25 years, repairing many trucks, and that he had had an opportunity to observe directions vehicles are moved as a result of impact; that he made these determinations from heating and bending and replacing of parts and that he replaced the parts and wheels on this particular truck. He testified that he had observed no damage to the outside of the outer left rear wheel but that there was a chip out of the top treads of the two outside dual tires and the left front portion of plaintiffs' car was caved in. He also identified scratch marks along the left-hand side of the tank. ▮▮▮ The question of qualifications of a witness to testify as an expert is primarily for, and usually is determined in the first instance by, the trial court. (54 Cal.Jur.2d 292, § 39; *Hutter* v. *Hommel*, 213 Cal. 677 [3 P.2d 554].) ▮▮▮ The subjects on which a claimed expert witness may testify in reference to automobile accidents are not entirely clear and much depends upon the facts of the particular case, and a large element of judicial discretion is involved. See *Waller* v. *Southern Calif. Gas Co.*, 170 Cal.App. 2d 747, 755 [339 P.2d 577], where "point of impact" was allowed but a question as to a right turn being intended was held not to be proper. (*Linde* v. *Emmick*, 16 Cal.App.2d 676 [61 P.2d 338].) Speed based on length of skid marks was held allowable but not as to the degree of angle at which one

car struck another. There is a conflict of opinion as to the admissibility of opinion evidence regarding the intensity of force or of a blow. (*Kroll* v. *Rasin*, 96 Cal.App. 84 [273 P. 820]; *Stout* v. *Pacific Mutual Life Ins. Co.*, 130 Cal. 471 [62 P. 732].) In *Wells Truckways, Ltd.* v. *Cebrian*, 122 Cal. App.2d 666 [265 P.2d 557] (hearing denied), this court was confronted with a similar problem. There, a duly qualified expert witness who was present at the scene of the accident and made his observations was permitted to express his opinion as to what actually happened in reference to direction of the force that damaged the cab, based upon actual observation of all the surrounding facts and which were made known to the jury pertaining to gouge marks on the highway, location of trucks, tracks of tires, etc., and it was held that such opinion did not necessarily invade the province of the jury in its determination of the ultimate issue of negligence. See also *Enos* v. *Montoya*, 158 Cal.App.2d 394, 399 [322 P.2d 472]; Witkin, California Evidence, section 191, page 212.

In the instant case, it was plaintiffs' contention that the rear end of the trailer jackknifed more or less broadside and at least partially across the south half or eastbound lane and directly in front of plaintiffs' car and that it was struck by them while in this position. To refute this testimony, defendants produced the expert witness in answer to this possibility and to point out to the jury the unlikelihood of this position from the facts explained to the jury by the witness. We believe the trial court was justified in allowing such testimony to be produced and apparently it was satisfied with the qualifications of the witness to express the opinions related although the foundation to do so was not too impressive. Furthermore, counsel for plaintiffs and defendants stipulated that a highway patrol officer, who made a similar observation of the same scene that day and at the same time, could testify, as an expert witness, to the effect that, from an examination of the physical damage of the Nash and the trailer and facts related in reference to the rear wheels leaving the trailer as a result of the impact, in his opinion the angle between the two vehicles, at the moment of impact, would have been less than 45 degrees. No abuse of discretion or prejudicial error appears in this respect. (*Vedder* v. *Bireley*, 92 Cal.App. 52 [267 P. 724].)

Next, plaintiffs claim prejudicial error of the court in giving claimed misleading and erroneous instructions in three instances. They concede that the trial court did give a correct statement and instructions on the burden of proof

rule, with some elaboration. The trial court then said that this rule is the most useful tool in determining issues of fact; that "Where you find that there is *any doubt* as to issue, then ask yourself who has the burden of proving this issue." (Italics ours.) Plaintiffs object to the use of the words "any doubt" as being confusing and misleading. It does not appear to us, from the emphasis placed on the true rule by the trial judge, that the jury was confused or misled to plaintiffs' prejudice by the added statement. In *Banes* v. *Dunger*, 181 Cal.App.2d 276 [5 Cal.Rptr. 278], relied upon by plaintiffs, the instruction there given lacked this quality. Here, the added portion was not definitive of the rule itself.

 Objection is taken to a given instruction on the subject of contributory negligence. The court concluded with the words that if plaintiff involved in a collision and suing for damages had been proven by a preponderance of the evidence to have been negligent and that negligence has contributed to the collision or accident "in any degree however slight, then that constitutes the defense of contributory negligence and he may not recover." It is argued that the instruction omits the necessary element that such negligence must constitute a "proximate cause of the injury." Plaintiffs' argument is technically correct. The proper wording should have been "negligence contributing proximately, no matter how slight, to the injury." (*Kettman* v. *Levine*, 115 Cal.App.2d 844 [253 P.2d 102].) The court did properly inform the jury as to the nature of plaintiffs' claim of negligence of the defendants and that defendants claimed plaintiffs were guilty of contributory negligence "proximately" contributing to this collision; that the burden is on defendants to establish it by a preponderance of the evidence and, further, that it must be proven not only that a person was negligent, but that the negligence was a proximate cause of the accident; that "it is the requirement that the negligence be shown to be a proximate cause. It doesn't necessarily have to be the only cause but it may—must be an efficient cause which brings about the injuries."

We are not convinced that the error complained of was prejudicial where the subject was suffciently covered by other proper instructions.

 The court refused California Jury Instructions Civil Number 22, dealing with direct and indirect evidence, and Number 31, dealing with the jury's consideration of depositions. In the light of the other instructions given, we see no prejudicial error in refusing to give these instructions.

 The next complaint is that the court erred in in-

structing the jury that the mere fact that an accident occurs, standing alone, is not proof that either party is negligent. (Citing *Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d 897].) That case involved the application of the res ipsa loquitur rule. The question of a violation of the statute in the instant case was in dispute and the facts do not bring the case within the res ipsa loquitur rule. No prejudicial error resulted from the giving of the instruction.

 The court instructed the jury that the violation of an express provision of the Motor Vehicle Code is negligence.

 The rule appears to be that a presumption of negligence arises, is rebuttable, and may be overcome by evidence of justification or excuse. (*Alarid* v. *Vanier,* 50 Cal.2d 617, *supra,* p. 621.) It has been further held that it is not necessarily negligence if it is the type of conduct that the jury feels a reasonable person would follow under the circumstances. (*Land* v. *Gregory,* 168 Cal.App.2d 15, 19 [335 P.2d 141].) While the court did not directly so state, it did say that negligence must be a proximate cause of a collision in order for it to be actionable and it instructed the jury to determine whether a person has complied with the requirement of reasonable care, and if the conduct measures up to the standard of what a reasonable person would do under the circumstances, the person has done all that the law requires of him, regardless of whether an accident occurs or not. While the complained of instruction fell short of instructing the jury that only a presumption of negligence arose, which was not conclusive, but that it may be overcome by other evidence showing the conduct in question was excusable or justifiable, it probably was sufficient to meet the requirement so that no prejudicial error resulted under the facts of this case. Plaintiffs' proffered instruction on the subject was proper and might well have been given.

Plaintiffs concede that certain of the errors complained of may not constitute reversible error, but they are convinced that the cumulative errors, considered together, constitute prejudicial error within the meaning and intent of article VI, section 4½ of the California Constitution.

We have examined the entire record, together with the instructions given and refused, and we are convinced that the errors complained of do not justify a reversal and a new trial of the issues. The issues were plain and the voluminous transcript indicates the relevant facts were properly placed before the jury and its determination does not indicate that it would

be reasonably probable that a result more favorable to the appealing parties would have been reached in the absence of the errors shown. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) The trial court fully considered all these questions on a motion for a new trial and reached the same conclusion.

Judgment affirmed.

Shepard, J., and Shea, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.