[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 341 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 342 
OPINION
Dawn Renae Diaz was seriously injured when she was struck by a car that had jumped a freeway center divider following its collision with a truck. She sued Karen Tagliaferri, [1] the driver of the car that struck her, and *Page 343 
Jose Carcamo, the driver of the truck with which Tagliaferri collided. Diaz also sued Carcamo's employer, Sugar Transport, alleging it was vicariously liable as Carcamo's employer. She further alleged that Sugar Transport was liable for its independent negligence in its hiring and retention of Carcamo. The jury returned a verdict against each defendant awarding plaintiff a total of $22,566,373 in damages. Pursuant to Proposition 51[2] it apportioned fault among Tagliaferri, Carcamo, and Sugar Transport.
Appellant, Sugar Transport, contends that because it admitted it was vicariously liable for Carcamo's conduct on a theory of respondeat superior, the trial court erred in permitting Diaz to proceed against it for its negligent hiring and retention of Carcamo. It claims that this error was compounded by admitting evidence of Carcamo's background. Relying on Jeld-Wen, Inc. v. Superior Court (2005) 131 Cal.App.4th 853
[32 Cal.Rptr.3d 351], Sugar Transport contends that its concession of vicarious liability removed all question of its independent fault and rendered evidence of Carcamo's character and conduct prior to the accident inadmissible. (Evid. Code, § 1104.) Sugar Transport also asserts that the trial court erred by giving a spoliation of evidence instruction regarding a missing tachograph chart. We affirm.
 STATEMENT OF FACTS AND PROCEDURAL HISTORY
Respondent Dawn Diaz was seriously injured in an automobile accident as she and two passengers were driving southbound on the 101 Freeway in Camarillo. Jose Carcamo was driving a truck northbound on the 101 Freeway. He was making a delivery for his employer, Sugar Transport. Tagliaferri had moved to the number one lane to pass Carcamo and was attempting to return to the number two lane in front of Carcamo when her right rear bumper came into contact with Carcamo's left front tire. Tagliaferri lost control of her vehicle, and flew over the median landing on top of Diaz's car.
Diaz sued alleging that Carcamo was negligent and that Sugar Transport was vicariously liable as his employer. The complaint also alleged that Sugar Transport was directly negligent in its hiring and retention of Carcamo. Sugar Transport answered denying liability, that it was Carcamo's employer, and that Carcamo was acting in the course and scope of his employment when the collision occurred. At trial, it abandoned the last two contentions.
The cause of the accident was hotly disputed. Diaz asserted that the collision occurred because Carcamo was not driving in the truck lane, was *Page 344 
speeding and inattentive, failed to yield the right-of-way, and failed to take evasive action to avoid the collision. Carcamo and Sugar Transport contended that Tagliaferri was the sole cause of the collision because she pulled in front of Carcamo's truck without allowing for adequate clearance between her car and the truck.
After a lengthy trial, the jury returned a special verdict awarding Diaz $22,566,373 in damages comprising $17,566,373 in economic damages and $5 million in noneconomic damages. As required by Proposition 51, the jury apportioned 45 percent of the fault for the accident to Tagliaferri, 20 percent to Carcamo, and 35 percent to Sugar Transport.[3]
The trial court denied Carcamo and Sugar Transport's motion for a new trial.
On appeal, Sugar Transport contends that having admitted that it was vicariously liable as Carcamo's employer under the doctrine of respondeat superior, the trial court erred in admitting evidence of Carcamo's prior employment, driving, and accident history as well as by instructing the jury on the theory of negligent hiring and retention. It also asserts the trial court erred in instructing the jury on Diaz's theory of evidence spoliation relative to the disappearance of Carcamo's tachograph chart.[4]
 DISCUSSION Evidence of Carcamo's Prior Employment and Driving History Were Properly Admitted; the Jury was Properly Instructed Concerning Negligent Hiring and Retention
A. Negligent Hiring and Retention Is a Theory of Direct Liability
Sugar Transport contends the trial court erred as a matter of law in denying its motion in limine to exclude evidence of Carcamo's involvement in several prior accidents and an evaluation from Carcamo's previous employer who dismissed Carcamo after three months and gave him a poor performance review. Relying on Armenia v. Churchill (1954) 42 Cal.2d 448 *Page 345 
[267 P.2d 303], and Jeld-Wen, Sugar Transport contends that because it had admitted it was liable for Carcamo's conduct this evidence was irrelevant.
In Armenta a road-paving worker was killed when a dump truck backed over him. The defendants were the truck driver and his wife, who was the driver's employer and registered owner of the truck. The complaint charged husband with negligence while acting in the course and scope of his employment. The complaint also alleged negligence against wife for entrusting the truck to her husband who she knew was a careless, negligent and reckless driver. Defendants admitted in their answer that husband was wife's employee and was acting within the scope of employment at the time of the accident. They denied the allegations of the wife's independent negligence. At trial, plaintiff offered evidence that husband had been found guilty of 37 traffic violations, including a conviction for manslaughter, and that wife knew these facts. Defendants objected on the ground that this evidence was directed to an issue which had been removed from the case by their admission in the pleadings that husband was acting in the course and scope of his employment.
Our Supreme Court held the trial court properly excluded the evidence. The court reasoned: "It is true that defendant [wife's] admission of vicarious liability as the principal for the tort liability, if any, of her husband was not directly responsive to plaintiffs' added allegations of fact . . . relating to her personal negligence. But the only proper purpose of the allegations . . . with respect to [wife] was to impose upon her the same legal liability as might be imposed upon [her husband] in the event the latter was found to be liable. Plaintiffs could not have recovered against [wife] upon either count in the absence of a finding of liability upon the part of [her husband]; and [wife] had admitted her liability in the event that [her husband] was found to be liable. Plaintiffs' allegations in the two counts with respect to [wife] merely represented alternative theories under which plaintiffs sought to impose upon her the same liability as might be imposed upon her husband. Upon this legal issue concerning the liability of [wife] for the tort, if any, of her husband, the admission of [wife] was unqualified, as she admitted that [her husband] was her agent and employee and that he was acting in the course of his employment at the time of the accident. Since the legal issue of her liability for the alleged tort was thereby removed from the case, there was no material issue remaining to which the offered evidence could be legitimately directed." (Armenta v. Churchill, supra,42 Cal.2d at pp. 457-458.)
Jeld-Wen also involved negligent entrustment of a truck driven by an employee in the course and scope of his employment. The defendants moved for summary adjudication of the issue on the ground that, before trial, the *Page 346 
defendant employer had admitted vicarious liability for the acts of the driver under the doctrine of respondeat superior. The trial court denied the motion and the defendants sought a writ of mandate. They asserted that they were entitled to summary adjudication as a matter of law because negligent entrustment was not a separate, independent tort, but rather a theory of vicarious liability. Relying on Armenta, they argued that the pretrial admission by the employer that its employee was acting in the course and scope of his employment at the time of the accident made the negligent entrustment theory superfluous.
The court in Jeld-Wen granted the petition. In doing so it distinguished the earlier opinion of a sister panel in Syah v. Johnson
(1966) 247 Cal.App.2d 534, 543-545 [55 Cal.Rptr. 741], which held that the tort of negligent entrustment was a distinct tort and imposed direct liability on the owner of a vehicle. The court in Jeld-Wen
concluded that the plaintiffs' negligent entrustment claim against the employer could not be separately pursued because the employer had made a binding pretrial admission of responsibility under the doctrine of respondeat superior. It concluded that the admission ended any question of its liability in the event its employee was found liable.
We conclude that neither Armenta nor Jeld-Wen is controlling or persuasive. Both cases involve negligent entrustment but do not discuss negligent hiring and retention. A case is not authority for an issue not considered. (In re Tobacco II Cases (2009) 46 Cal.4th 298, 323 [93 Cal.Rptr.3d 559, 207 P.3d 20].) Moreover, a recent case from the Second District holds, contrary to Jeld-Wen, that negligent entrustment is an independent tort imposing direct liability. (Bayer-Bel v. Litovsky
(2008) 159 Cal.App.4th 396, 400 [71 Cal.Rptr.3d 518]; see also Blakev. Moore (1984) 162 Cal.App.3d 700, 707 [208 Cal.Rptr. 703] [same].) More importantly, however, neither case purports to deal with the allocation of fault required by Proposition 51. (Civ. Code, § 1431 et seq.)
With respect to negligent hiring and retention, our Supreme Court recognized, in a decision prior to Armenta, that negligent retention is a theory of direct liability independent of vicarious liability. InFernelius v. Pierce (1943) 22 Cal.2d 226, 233-234 [138 P.2d 12], the court stated: "The neglect charged here was not that of the subordinate officers. . . . The neglect that is pleaded is that of the defendants themselves. The legal fault charged here as the ground of liability is directly and personally that of the superior officers (the defendants). Responsibility is not claimed to devolve up to them merely derivatively through a relationship of master and servant or principal and agent. The fact that the killer-officers were employees subordinate to the *Page 347 
defendants is essentially material here, not for the purpose of tracing responsibility for their acts up to defendants through the ordinary principles of agency but rather as showing that the homicidal officers were in effect an instrumentality under the control of the defendants in the handling of which the defendants were given and charged with responsibility and power, and the question of proximate cause of the injury relates directly to the neglect of the defendants."
In Underwriters Ins. Co. v. Purdie (1983) 145 Cal.App.3d 57, 68-69
[193 Cal.Rptr. 248], the court explained: "[T]here is a division of authorities on whether negligent hiring may serve as an independent basis for an employer's liability to a third person, [¶] One line of cases is to the effect that an employer's failure to hire only competent and proper employees does not of itself constitute an independent ground of actionable negligence. [Citations.] In other words, if liability to a third person for the act of an employee is to exist, it must be predicated upon the wrongful act or omission of the employee, and not upon the care or lack of it exercised by the employer in selecting the employee. [Citation.] [¶] The other view, however, which California follows, is that an employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. [Citations.] The rule is stated in Restatement Second of Agency section 213: `A person conducting an activity through servants . . . is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . (b) in the employment of improper persons . . . involving the risk of harm to others: . . .' [¶] Comment d reads in part: `The principal may be negligent because he has reason to know that the servant . . ., because of his qualities, is likely to harm others in view of the work . . . entrusted to him. . . . [¶] An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity. . . . [¶] Liability results under the rule . . .,not because of the relation of the parties, but because the employerantecedently had reason to believe that an undue risk of harm would existbecause of the employment. . . .'"
The rule of direct liability for negligent hiring and retention has been followed in numerous subsequent cases. (See Phillips v. TLCPlumbing, Inc. (2009) 172 Cal.App.4th 1133, 1139 [91 Cal.Rptr.3d 864] [negligent hiring and retention imposes direct, not vicarious, liability]; see also Far West Financial Corp. v. D S Co. (1988)46 Cal.3d 796, 812 [251 Cal.Rptr. 202, 760 P.2d 399] ["there are many instances in which a defendant who is vicariously liable for another's acts may also bear some direct responsibility *Page 348 
for an accident, either on the basis of its own action — for example, the negligent hiring of an agent — or of its own inaction — for example, the failure to provide adequate supervision of the agent's work"]; Delfinov. Agilent Technologies, Inc. (2006) 145 Cal.App.4th 790, 815 [52 Cal.Rptr.3d 376] ["Liability for negligent . . . retention of an employee is one of direct liability for negligence, not vicarious liability."]; Doe v. Capital Cities (1996) 50 Cal.App.4th 1038, 1054
[58 Cal.Rptr.2d 122] [negligence liability will be imposed upon the employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes"]; Roman Catholic Bishop v. Superior Court (1996)42 Cal.App.4th 1556, 1564 [50 Cal.Rptr.2d 399] ["An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit."]; Evan F. v. HughsonUnited Methodist Church (1992) 8 Cal.App.4th 828, 842 [10 Cal.Rptr.2d 748] ["California law on negligent hiring follows the rule and comment set forth in the Restatement Second of Agency section 213."].)
In Roberts v. Ford Aerospace Communications Corp. (1990)224 Cal.App.3d 793 [274 Cal.Rptr. 139], this court rejected an argument, similar to that made by Sugar Transport, that an employer's liability is derivative only and it could not be liable for damages greater than that imposed on its employee. "That rule, applicable in suits by an injured victim against the driver and the driver's employer as respondeat superior, is inapplicable where the company was aware of the complaints and sanctioned the conduct of its employees and managing agent. `The liability of an innocent, nonparticipating principal under the respondeat superior doctrine is based upon the wrongful conduct of the agent; the principal cannot be liable unless the agent is liable. . . .` . . .` . . . If an employee acts under the direction of hisemployer, the employer participates in the act, and his liability is based upon his own fault. . . .' [Citations.] This rule holds true where, as here, the principal is under an obligation or liability independent of the agent's acts." (Id. at p. 800.)
Sugar Transport's reliance on Camargo v. Tjaarda Dairy (2001)25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096], also is misplaced. In Camargo, our Supreme Court rejected an attempt to assert "direct" liability against the hirer of an independent contractor. There, the plaintiffs' decedent Camargo was killed when his tractor rolled over. Camargo had been an employee of an independent contractor, Golden Cal Trucking, which had been hired by a dairy to clear the manure out of its corrals. Camargo's heirs sued the dairy, asserting it was directly liable to them on a theory of negligent hiring, since the dairy had failed to determine whether the trucking company and Camargo were qualified to operate the tractor decedent was operating at the time of his death. (Id.
at p. 1238.) This effort to recast the dairy's possible vicarious
liability as a "theory of direct liability" was rejected; Camargo ruled the *Page 349 
liability of the hirer of an independent contractor was necessarily vicarious and derivative rather than direct, because such liability derives from the act or omissions of the hired contractor who caused the injury by failing to use reasonable care. (Id. at p. 1244.) In addition, the high court pointed out that it is unfair as a matter of policy to subject the hirer of an independent contractor to such "direct" liability for negligent hiring as a result of injuries to its own employees, when the independent contractor itself is immune from suit. Workers' compensation exclusivity principles prevent employees from suing their own employers for failure to provide a safe working environment, and the same rule should apply to the hirers of those independent contractors. (Id. at pp. 1244-1245.)
The case is factually inapposite. Here, it is not a contractor's employee who was injured and seeking damage as in Camargo, but a third party who was injured by the contractor's employee. Thus, the policy reason underlying the decision — it would be unfair to subject the hirer of an independent contractor to liability for negligent hiring when the independent contractor, because of our workers' compensation system, is immune from suit — is absent.
B. Carcamo's Employment and Driving History Is not Inadmissible Character Evidence
Sugar Transport argues that evidence of Carcamo's employment and driving history is character evidence inadmissible under Evidence Code sections 1101, subdivision (a), [5] and 1104.[6] We disagree. Relevant character evidence is admissible in civil cases except where it is offered to prove conduct, or quality of conduct, on a specific occasion. (Carr v. Pacific Tel. Co. (1972) 26 Cal.App.3d 537, 544 [103 Cal.Rptr. 120].)
"Evidence that is relevant and admissible for one purpose may be admitted for such purpose even though it is inadmissible for another purpose." (People v. Eagles (1982) 133 Cal.App.3d 330, 340 [183 Cal.Rptr. 784].) Although evidence of prior accidents is inadmissible to prove Carcamo was at fault in the present accident (Evid. Code, § 1101, subd. (a)), it is admissible where it tends to show motive, knowledge, identity, intent, *Page 350 
opportunity, preparation, plan, or absence of mistake or accident. (Evid. Code, § 1101, subd. (b);[7] People v. Brogna (1988) 202 Cal.App.3d 700,706 [248 Cal.Rptr. 761].)
An employer's duty of care in hiring is breached "when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm to third persons in light ofthe particular work to be performed." (Federico v. Superior Court (1997)59 Cal.App.4th 1207, 1214 [69 Cal.Rptr.2d 370].) (6) Where, as here, knowledge of a fact has important bearing upon the issues, evidence is admissible which relates to the question of the existence or nonexistence of such knowledge. (Larson v. Solbakken (1963)221 Cal.App.2d 410, 418 [34 Cal.Rptr. 450].) In this case, the evidence was not offered to show Carcamo's propensity to be involved in accidents, but to show that Sugar Transport had knowledge of Carcamo's involvement in prior accidents before he was hired.
Such evidence, of course, remains subject to exclusion under Evidence Code section 352. (People v. Brogna, supra, 202 Cal.App.3d at p. 706.) "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.] Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion `must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]'" (People v.Rodrigues (1994) 8 Cal.4th 1060, 1124-1125 [36 Cal.Rptr.2d 235,885 P.2d 1].)
Here, evidence of Carcamo's prior employment and driving history had substantial probative value in determining whether Sugar Transport was negligent in hiring or retaining Carcamo as a driver. Indeed, such evidence is likely the only way this could be shown. (Lehmuth v. LongBeach Unified School Dist. (1960) 53 Cal.2d 544, 554 [2 Cal.Rptr. 279,348 P.2d 887].) The record demonstrates that at a lengthy Evidence Code section 402 hearing, the trial court carefully balanced the probative value of the evidence against the potential for prejudice resulting from its improper use by the jury. The evidence was introduced not for the purpose of showing Carcamo's negligence but rather for the purpose of showing Sugar Transport's disregard of Carcamo's checkered past when it hired him and the unreasonable danger to which others were exposed by his driving. *Page 351 
"`When evidence is admissible for a limited purpose . . . a party who could be adversely affected if the evidence is not so restricted is entitled to have the trial judge restrict the evidence to the limited purpose . . . and instruct the jury accordingly.'" (People v. Eagles,supra, 133 Cal.App.3d at p. 340.) Here, the trial court gave the standard limiting instruction that evidence of Carcamo's prior employment and driving history could be used only for the purpose of finding negligent hiring and retention. The jury was instructed both during trial, when the evidence was introduced, and again during jury instructions, as follows: "During the trial, I explained to you that certain evidence was admitted for a limited purpose. You may consider that evidence only for the limited purpose that I described and not for any other purpose. . . . [¶] You may not consider whether Jose Carcamo had any prior accidents to determine negligence relating to this accident. Any evidence of specific acts or incidents of accidents is irrelevant to the question of whether Jose Carcamo was negligent on the day of this accident."
We must presume that the jury followed these admonitions and limited its consideration of the evidence as instructed. (People v. Brogna,supra, 202 Cal.App.3d at p. 710.) If Sugar Transport thought the limiting instruction was inadequate in informing the jury not to consider evidence of Carcamo's prior accidents as propensity evidence, it was its responsibility to request additional clarifying language. (People v.Rodrigues, supra, 8 Cal.4th at p. 1192.)
It is evident that the trial court was properly concerned with the ramifications flowing from the admission of this evidence and exercised care in its admission. It did so with a full recognition that plaintiff was proving Sugar Transport's independent and direct negligence — its own responsibility for Diaz's injuries. In California, negligent hiring and retention are theories of direct liability, independent of vicarious liability. Therefore, the court did not err in admitting evidence and instructing the jury regarding those issues.[8]
Pursuant to Civil Code section 1431.1, the jury was required to apportion fault amongst defendants to insure that each bore its share of responsibility for noneconomic damages ". . . in closer proportion to their degree of fault." (Id., subd. (c).) Plaintiff relied on distinct theories of independent tort liability to implicate defendants. One of the theories was negligent hiring and retention, a theory of fault which plaintiff claimed imposed greater responsibility on Sugar Transport than would be attributed to it for simply being Carcamo's employer. Absent proof of negligent hiring and retention, the required apportionment of fault would have been impossible. But such proof raised the likelihood of prejudicing the jury. The trial judge *Page 352 
sought to resolve this tension in his detailed examination of the evidence and his admonitions and instructions to the jury. UnlikeArmenia, while Sugar Transport's concession of liability for Carcamo's driving established the fact of its liability, it did not establish the degree of its liability for noneconomic damages. There was no error.
 The Jury Was Properly Instructed on Willful Suppression of Evidence
Sugar Transport asserts the trial court erred in denying its motion to exclude evidence of the disappearance of the tachograph chart. Evidence Code section 413 states: "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case."
On this issue, the court gave the standard instruction on willful suppression of evidence, as follows: "You may consider the abilities of each party to provide evidence. If a party provided weaker evidence when it could have presented stronger evidence, you may distrust the weaker evidence.
"If you find that defendants willfully suppressed the tachograph chart [for] the subject truck for the day of the subject accident, you may draw an inference that there was something damaging to defendants' case contained on that chart. Such an inference may be regarded by you as reflecting defendants' recognition of the strengths of defendants' case generally and/or the weakness of their own case. The weight to be given such circumstance is a matter for your determination."
"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (Soule v. General Motors Corp. (1994)8 Cal.4th 548, 572 [34 Cal.Rptr.2d 607, 882 P.2d 298].) (12) The substantial evidence test applies to jury instructions, and it is prejudicial error to instruct the jury on willful suppression of evidence in the absence of such evidence. However, a willful suppression of evidence instruction does not require direct evidence of fraud. (Bihunv. ATT Information Systems, Inc. (1993) 13 Cal.App.4th 976, 992 [16 Cal.Rptr.2d 787], disapproved on another point in Lakin v. WatkinsAssociated Industries (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109,863 P.2d 179].)
In Williamson v. Superior Court (1978) 21 Cal.3d 829, 835-836, footnote 2 [148 Cal.Rptr. 39, 582 P.2d 126], our Supreme Court explained *Page 353 
that the rule of Evidence Code section 413 "`. . . is predicated on common sense, and public policy. The purpose of a trial is to arrive at the true facts. A trial is not a game where one counsel safely may sit back and refuse to produce evidence where in the nature of things his client is the only source from which that evidence may be secured. Adefendant is not under a duty to produce testimony adverse to himself butif he fails to produce evidence that would naturally have been producedhe must take the risk that the trier of fact will infer, and properlyso, that the evidence, had it been produced, would have been adverse.'"
Sugar Transport's argument that the instruction was not justified because there was no evidence that it knew what the tachograph chart would reveal is unavailing. One of Diaz's experts stated that tachographs have been in use "since the 1930's." Almost 60 years ago, the court described the information charted by a tachograph. "This instrument registered and recorded the speed of that vehicle and shows that it was going about 42 miles an hour just before the accident." (Fortier Trans.Co. v. Union Packing Co. (1950) 96 Cal.App.2d 748, 756 [216 P.2d 470]; see also Warren v. Pacific Intermountain Exp. Co. (1960)183 Cal.App.2d 155, 163 [6 Cal.Rptr. 824] ["Its purpose was to determine the various speeds obtained by the truck at different times and the duration of stopping periods."]; People v. Williams, supra,36 Cal.App.3d 262, 272 ["the tachograph was a device attached to the speedometer cable of the truck which measured on a chart the revolutions of the engine, the vehicle speed, and the distance traveled. These factors were also correlated with time by a clock in the device. Certain motions of the styli also indicated swerving or side motion"].)
"Evidence of the actions and conduct of a party, particularly as to the rate of speed and method of driving an automobile just before a collision occurs, is admissible if not too remote." (Larson v. Solbakken, supra,221 Cal.App.2d at p. 421.) Here, the tachograph evidence would have been relevant to show whether Carcamo sped up to prevent Tagliaferri from passing him. Sugar Transport cross-examined Diaz's experts about weaknesses in his interpretation. In addition, it had the opportunity to present evidence that the tachograph was unintentionally lost rather than intentionally destroyed, and to argue to the jury the weight of the evidence.
Diaz presented sufficient evidence from which the jury could draw an inference that Sugar Transport did not merely lose or misplace the tachograph chart, but destroyed it to prevent the disclosure of damaging information. (Evid. Code, § 413; Williamson v. Superior Court, supra,21 Cal.3d at pp. 835-836, fn. 2; Walsh v. Caidin (1991)232 Cal.App.3d 159, 164-165 [283 Cal.Rptr. 326].) *Page 354 
The judgment is affirmed. Respondent shall recover costs on appeal.
Gilbert, P. J., and Coffee, J., concurred.
[1] Tagliaferri settled with Diaz prior to trial and is not a party to this appeal.
[2] Civil Code section 1431 et scq. (Prop. 51, adopted by initiative June 3, 1986.)
[3] Civil Code section 1431.2, subdivision (a) states: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."
[4] A tachograph is a "device attached to the speedometer cable of the truck which measured on a . . . chart with three steel styli the revolutions of the engine, the vehicle's speed, the distance traveled by the vehicle, and time." (People v. Williams (1973) 36 Cal.App.3d 262,266 [111 Cal.Rptr. 378].)
[5] Evidence Code section 1101, subdivision (a), states: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."
[6] Evidence Code section 1104 states: "Except as provided in Sections 1102 and 1103, evidence of a trait of a person's character with respect to care or skill is inadmissible to prove the quality of his conduct on a specified occasion."
[7] Evidence Code section 1101, subdivision (b) states in part: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. . . ."
[8] Because we resolve the issue on the merits, we need not address the procedural arguments made by the parties. *Page 355