[Crim. No. 427. Third Appellate District.—September 24, 1918.]

## THE PEOPLE, Respondent, v. LEE GOW and CHOW SOON, Appellants.

CRIMINAL LAW — MURDER — DEFENSE OF ALIBI—IDENTIFICATION OF DEFENDANTS — CONFLICT OF EVIDENCE. — Although witnesses, both Chinese and Caucasians, including prominent members of the police force of the city of Stockton, testified positively that the defendants were in that city at the time the murder with which they were charged, and of which they were found guilty, was committed in the county of Butte, nevertheless, there having been abundant evidence for the prosecution of the identification of the defendants and that they committed the crime, the identification of the defendants, and the disposition of the witnesses to tell the truth, were considerations entirely for the determination of the jury, and an appellate court is not permitted to hold that the verdict of conviction is unsupported.

ID.—CLAIM OF INCOMPETENCY OF JUROR — MISUNDERSTANDING OF INSTRUCTIONS—WAIVER.—Where on a trial of a prosecution for murder, after the case had been submitted, but before verdict, a colloquy took place between the court and one of the jurors indicating that the latter had not at first understood all the instructions given by the court, whereupon by direction of the court the instructions were again read to the jury, the defendants, by failing to request permission to question the juror further to ascertain the extent of his misunderstanding, that he might be enlightened, and by not even asking that the jurors be polled when they returned with the verdict of conviction, waived all privilege thereafter to urge the incompetency of the juror.

ID.—REDIRECT EXAMINATION.—The defendants were not prejudiced by the sustaining of an objection to a question asked in their behalf on redirect examination of one of their witnesses, when the witness had already answered the same question on cross-examination.

ID. — INCOMPETENCY OF DEFENDANT'S COUNSEL. — Where on appeal in such case it is argued as a ground for reversal of a judgment of conviction that defendants' counsel was mentally unfit to conduct the trial, and in support of such ground it is urged that the counsel referred to committed suicide about one month after the conviction of the defendants, the appellate court cannot take judicial notice of the death of such counsel.

APPEAL from a judgment of the Superior Court of the County of Butte, and from an order denying a new trial. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

George E. Gardner, George J. McDonough, and Danna P. Eicke, for Appellants.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—The defendants were convicted of murder in the first degree and the jury fixed the punishment at imprisonment for life. The appeal is from the judgment and the order denying a motion for a new trial. That a foul murder was committed is not disputed. It was deliberate, premeditated, and malicious. It was one of a series of bloody episodes that attended what is known as a "tong war" between rival societies of Chinese. The principal contention in the case is in reference to the defense of *"alibi,"* upon which appellants relied. It must be admitted that their claim in that regard was strongly supported. Not only Chinese witnesses, but several Caucasians, including prominent members of the police force of the city of Stockton, testified positively that the defendants were in said city on the very day and at the very hour when the offense was committed near Gridley, in the county of Butte. Their testimony was entirely inconsistent with the theory of the guilt of the defendants, as the time of the murder was definitely fixed. But the jury, probably believing that some of the witnesses were mistaken and that others were falsifying, rejected their said statements, and based their verdict upon the evidence offered by the people. We can readily understand how the testimony in support of the *"alibi"* might have led the jury to acquit the defendants, but after a careful reading of the entire record, we are compelled to say that there is abundant evidence of the identification of these men as the murderers of the deceased, and that under the familiar rule we are not permitted to hold that the verdict is unsupported. Many witnesses, including white men, testified unreservedly that the defendants were in the vicinity of the scene of the crime at or near the time it was committed, and one Chinese testified unequivocally that he was at the home of the deceased and witnessed the perpetration of the deed. His testimony, if fully credited, compels the conclusion that the crime was deliberate murder and that the defendants committed it. Nor can it be accepted for a moment that the testimony of these wit-

nesses for the people is inherently improbable. Of course, the possibility of a mistake as to the identification of an individual under such circumstances is ever present, and innocent men may be unjustly convicted, but it is hardly necessary to add that the accuracy of the memory of the witnesses as to the identification of the parties, and the disposition of said witnesses to tell the truth were considerations entirely for the determination of the jury.

Of course, it is plain that, in a criminal case, the verdict must be unanimous, but there is no ground for holding that the requirement was violated herein. Such contention, however, is made in view of a certain colloquy that occurred between the judge and the jurors after the case had been submitted but before a verdict had been reached. A juror, Mr. Beck, asked this question: "When these jurors swore to try this case by the law and the evidence, did it imply the unwritten law as well?" The court answered: "By consent of the defendants I state this: All of the law by which you will be governed in this case is contained in the instructions given you here by the court. The court will now read all the instructions again if you desire." Mr. Beck then said: "If I take it right, then, it implied the unwritten law because it did not state that it was only the written law. It that right, your Honor?" The transcript proceeds: "The Court (to Reporter). Read the statement again.' (At this time the reporter reads the statement again.) Mr. Beck. We were asked if we would try the case by the law and the evidence. Why didn't they give us those instructions at the beginning of the case so we could know if the unwritten law was not implied?" The answer clearly implies that his delusion as to the unwritten law had been allayed by the repetition of the statement of the court, but he was disposed to criticise the procedure as to the time of giving the instructions. But, manifestly, his opinion as to that matter is of no moment here, and it does not constitute a cause of complaint by appellants. The court then asked each of the jurors if he desired the instructions to be read again. They all said, "No," some of them supplementing their answers with the explanation: "I understand them." Mr. Beck, however, answered: "No, I don't understand them." Finally, as to this the record shows: "The Court. 'Do you all understand that these were the instructions that I read to you at the close of the trial. This is the close of the case.

You may retire to your room.' (At this time the jurors retire to their jury-room.)'' If appellants were dissatisfied with the situation they should have manifested it in the proper manner. They should have requested permission to question the juror further to ascertain the extent of his misunderstanding of the instructions that he might be enlightened, but they were apparently content and made no objection to the further consideration of the case by said juror. Indeed, when the jury returned with a verdict of conviction, appellants were mute and did not even ask that the jurors be polled. Their conduct signified an acquiescence in the course pursued, and they waived all privilege thereafter to urge the incompetency of the said juror. It may be added that this consideration was not presented at all on the motion for a new trial, and seems not to have been regarded seriously by appellants until they filed their brief in this court.

Moreover, some of the instructions given were quite complicated and contained technical expressions that would not be easily understood by the lay mind. These were not essential to a proper determination of the cause by the jury, and we have a right to assume that such portion of the charge was what the juror had in mind in such statement. Besides, we must presume that the other jurors were able to explain the instructions to the satisfaction of Mr. Beck, and that during the four hours they were deliberating after returning again, they succeeded in removing any misapprehension, at least as to the material portions of law involved.

It is claimed that the court erred in sustaining the district attorney's objection to the question asked on redirect examination of witness, Lawrence Moore: ''Is there anything that fixes this particular date in your memory, Mr. Moore?'' The witness had testified on direct examination that he saw the defendants on March 6th at about ten minutes after 12 o'clock noon at 131 South Hunter Street, Stockton. On cross-examination, the district attorney asked the witness questions as to his memory of different times and places, when and where he had seen the defendants, the object being, of course, to discredit his testimony as to this particular date, and to leave the impression on the minds of the jury that it was impossible for the witness to be certain that he saw the defendants on March 6th, as he claimed. Appellants indulge in an interesting discussion of the scope and purpose of redirect

examination, quoting from section 871 of volume 5 of Jones' Commentaries on Evidence. We agree generally with what is stated by counsel as to the admissibility of such explanation. And it may be added, that the court subsequently allowed similar questions addressed to the other witnesses. However, the ruling here was clearly without prejudice, since the witness had answered the question on cross-examination. The district attorney asked him: "How do you fix the time in your mind?" and he answered: "I hired a boat to him on that day." He went on to explain that he hired the boat to Chew Chung, and a memorandum was made of it, and the defendants were present and "that is why I remember it." If there had been any other circumstance to aid his memory he had ample opportunity to state it. The repetition of his answer to the question would have added nothing to the force and effect of his testimony.

One of the most singular points made by appellants is stated by them as follows: "We now approach the third point upon which we claim reversal should be granted. George McDonough, Esq., leading counsel for the defense was mentally unfit to conduct a trial such as this, or, in fact, any other trial. It is regrettable, indeed, that we are forced to call the court's attention to the fact, but we feel justified in doing so because of the gravity of the offense with which Lee Gow and Chow Soon are charged. George J. McDonough, a man of wide experience in the legal profession, unfortunately met with reverses, and as an officer of this court it is believed your Honors, will take judicial notice of the fact that he committed suicide about one month after these appellants were convicted."

It can hardly be seriously argued that we can take judicial notice of Mr. McDonough's death. But, aside from that, an insurmountable objection to our attaching any importance to this contention is found in the fact that there is no evidence whatever in the record that Mr. McDonough was incompetent. As far as we can determine from a reading of the transcript he seemed quite capable of protecting the interest of his clients. We may add that two other attorneys were associated with him, and neither of them nor the judge of the court, apparently, discovered anything in the conduct of said attorney to create an impression that he was mentally unbalanced.

In the foregoing we have covered all the contentions made by appellants, and it must be plain that no sufficient reason has been advanced for an interference with the verdict of the jury. The judgment and order are therefore affirmed.

Chipman, P. J., and Hart, J., concurred.