[Civ. No. 2640. Third Appellate District.—December 17, 1923.]

# A. BASSI et al., Respondents, v. E. D. WALDEN, Appellant.

[1] SALES—RIGHT OF INSPECTION—TIME.—While there are well-recognized exceptions to the rule, ordinarily a purchaser's right of inspection should be exercised at or before the time of delivery and at the place of delivery.

[2] ID.—PLACE OF REJECTION—INFERENCES—INTENT—PAROL EVIDENCE. Defendant's place of business having been in the county where the stakes were made, and, at the time of making the contract of purchase, the stakes having been on the ground near the depot from which they were to be shipped, and the stakes having been delivered to defendant at such point of shipment and title having passed to him at that place, the natural inference from the stipulation in the contract that plaintiffs were "to stand all shortage and culls" was that the culls were to be rejected during the transfer of the stakes from the piles to the cars; but such provision was not so definite and certain as to preclude parol proof of the intention of the parties as to the time and place of inspection.

[3] ID.—DENIAL OF CONTINUANCE—DISCRETION OF TRIAL COURT—EVIDENCE.—In an action to recover a balance due on the purchase price of certain stakes, it cannot be said that the trial court abused its discretion in denying defendant's motion, made during the course of the trial and renewed at the close of the evidence, for a continuance to enable him to take the depositions of the persons to whom shipments had been made for the purpose of showing the number of stakes which had been rejected, where defendant did not present any affidavit or other proof in support of his motion and the record does not disclose the names of the persons whose depositions were desired or the facts to which they would testify, and there is no showing why the depositions had not been taken prior to the trial.

[4] ID.—DELIVERY—BILLS OF LADING—EVIDENCE.—In an action to recover a balance due on the purchase price of certain stakes, the

bills of lading of the railroad company do not constitute the best evidence as to whether the stakes were delivered to defendant on the car or the number thereof, and plaintiff is properly permitted to prove such facts by parol testimony.

APPEAL from a judgment of the Superior Court of Humboldt County. H. L. Preston, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. H. G. Weaver and Metzler & Mitchell for Appellant.

Mahan & Mahan for Respondents.

FINCH, P. J.—The plaintiffs were given judgment and the defendant appeals.

February 17, 1921, plaintiffs entered into a contract with the defendant reading as follows: "The parties of the first part do hereby agree to deliver 200 M A #1—6 ft. stakes at the Shively switch. Delivery to be made as soon as possible. Price to be paid—$52 per M delivery at switch or $53.30 delivery on cars. One half to be paid on delivery at switch, balance to be paid 10th month following shipment." Under this contract either four or five carloads of stakes were delivered to and shipped by defendant during the early part of 1921, the evidence being conflicting as to the number of cars. In addition to the stakes shipped, the plaintiffs, up to January 20, 1922, had piled 165,000 stakes south of the depot at Shively. On the latter date the parties entered into the following agreement: "Agreement entered into between Bassi & Co. of the first part and E. D. Walden, party of the second part. The party of the first part agrees to load 165000 stakes price to be paid fifty-one dollars ($51.00) f. o. b. car, and agrees to stand all shortage and culls, load promptly and load light stakes 165,000 stakes now piled south of depot. Party of the second part agrees to make payments 10th of mo., following shipment, full payment or settlement March 15th, 1922. This is new agreement to cover former contract made in Feb. or March. Amount 200,000." It is admitted that 161,200 stakes were shipped under the second contract. It appears that the stakes were shipped by defendant to

various persons in the San Joaquin Valley where they were used as grape stakes.

Appellant contends that it was the understanding of the parties that the culls were to be rejected and deducted at the points of destination in the San Joaquin Valley and that plaintiffs were to stand the loss of the stakes so rejected. [1] Ordinarily a purchaser's right of inspection should be exercised at or before the time of delivery and at the place of delivery. (*J. K. Armsby Co.* v. *Blum*, 137 Cal. 553 [70 Pac. 669]; *Whitaker* v. *Dunlap-Morgan Co.*, 44 Cal. App. 140 [186 Pac. 181]; *Samuel M. Lawder & Sons Co.* v. *Albert Mackie Grocery Co.*, 97 Md. 1 [62 L. R. A. 795, and note, p. 804, 54 Atl. 634].) There are, of course, well-recognized exceptions to the rule, as pointed out in some of the authorities cited. [2] Defendant's place of business was in Humboldt County. The stakes were delivered to him at Shively, and title undoubtedly passed to him at that place. The stakes were on the ground at the time the second contract was executed. Interpreting the contract in the light of the situation of the parties and the surrounding circumstances, the natural inference from the stipulation that plaintiffs were ''to stand all shortage and culls'' is that the culls were to be rejected during the transfer of the stakes from the piles to the cars. The term, however, is not so definite and certain as to preclude parol proof of the intention of the parties as to the time and place of inspection. The evidence shows, without substantial conflict, that there is a custom among the buyers of Humboldt County to pay for stakes purchased upon the basis of the count made at the places to which the buyers ship the stakes, after deducting the culls rejected at such places. The defendant testified that the second contract was executed with the express understanding that the plaintiffs were to ''be responsible for the shortage and culls at the other end of the line.'' There is no direct contradiction of this testimony. Witnesses for the plaintiffs testified that either the defendant or his brother, W. M. Walden, acting for defendant, inspected the stakes as they were loaded on the cars; that when asked if they were graded ''good enough'' they would say ''they were fine''; that when asked ''if we were culling them good enough,'' W. M. Walden ''said they were fine''; that W. M. Walden went

over each car as it was loaded every day; that he was there every day and went into each car and looked at the stakes. The whole contract price was $10,378.73 and while the defendant paid the plaintiffs a total of $8,550.50 prior to the completion of the shipments, he made no claim that culls had been shipped until after the last shipment. Whatever the place of inspection intended by the parties, the evidence shows that the culls were thrown out before shipment and there is no evidence that any culls were shipped, except as hereinafter stated.

The men who loaded the stakes on the cars were experienced loaders. They "load nearly all the stakes loaded from Shively . . . for all the people around there." In loading plaintiffs' stakes they culled out from 5,000 to 6,000 of them. They threw out the culls in loading from the piles to the wagon and again in transferring from the wagon to the cars. They inspected the stakes "pretty close," would see "just about" every stake. The defendant testified that he was at the point of destination when a car, number 88,373, containing 8,000 stakes, was received and that 1,800 of them were rejected as culls. The evidence does not show that any of plaintiffs' stakes were shipped in a car of that number, but that 8,000 of their stakes were shipped in car number 88,673 on March 7, 1922, and that five different cars contained 8,000 stakes each. A Mr. Carter seems to have had charge of the loading and shipment from Shively of stakes belonging to defendant and not involved in this action. Relative to the 8,000 stakes contained in car number 88,373, the defendant testified: "This car came in to me. . . . I saw the car was billed out by Carter, and I wired back to my brother to tell Carter not to load any more culls in the car. At the time I thought Carter billed it out and at the time I thought that it was my car . . . but come to find out it belonged to Gianoni and Bassi & Company and I sold it to another party at a loss of $10 a thousand. . . . Q. Were the culls sold? A. I got two cents apiece for them. . . . Q. You never reported to Gianoni or Bassi & Co.? A. We never even deducted that, I have reported. Q. You did not deduct it? A. No, sir, I thought we would agree on that after I got back here. . . . We never deducted on our report. Q. Then you are making no claim for those now?

A. There is 1800. . . . Q. And you made no deduction for this? A. No.'' From the foregoing testimony it is uncertain whether defendant at the trial claimed credit for the 1800 culls. The answer consisted of a general denial which, of course, was sufficient, but it did not particularly point out the defense relied on. In view of the nature of the answer and the uncertainty of the testimony, the defendant should have clearly made known to the trial court whether he claimed credit for the 1,800 culls. From the discrepancy between the number of the car containing the culls and that of any car loaded by plaintiffs, together with defendant's testimony that he ''saw the car was billed out by Carter,'' may have caused the court to conclude that the stakes therein were not loaded by plaintiffs. It further appears from the foregoing evidence of defendant that he assumed ownership of the culls and sold them and made no deduction by reason thereof. The evidence in this regard is not so clear and certain as to establish, as a matter of law, contrary to the finding of the trial court, that defendant was entitled to any credit on account of the 1,800 culls. There is no other evidence tending to show that culls were included in any of the shipments.

[3] The defendant attempted to show the number of culls rejected at the points of destination by the returns received by him from his purchasers at such points. The record does not show what these returns disclosed. The court sustained plaintiffs' objection to the admission of the evidence. Counsel for defendant thereupon asked for a continuance to enable him to take the depositions of the persons to whom shipments had been made for the purpose of showing the number of stakes which had been rejected as culls. At the close of the evidence he renewed the motion for a continuance. The motion was denied and appellant contends that the court abused its discretion in denying the motion. The defendant did not present any affidavit or other proof in support of his motion. The record does not disclose the names of the persons whose depositions were desired or the facts to which they would testify. Neither was there any showing as to why the depositions of such persons had not been taken prior to the trial. ''A motion to postpone a trial on the ground of the absence of evidence can only be made upon affidavit showing the materiality of the

evidence expected to be obtained, and that due diligence has been used to procure it." (Code Civ. Proc., sec. 595.)

[4] Plaintiffs produced bills of lading showing the shipments of four cars of stakes under the first contract. A witness for plaintiff was then asked: "After these stakes had been shipped was there another carload shipped by Mr. Walden from your stakes?" Counsel for defendant objected as follows: "We object to it on the ground it is not the best evidence, the best evidence is the record of the railroad company for shipping those." The objection was overruled and several witnesses testified that the carload of stakes in question was shipped. No contention is made, nor could any be made successfully, that the evidence produced, if admissible, is not sufficient to show that the carload of stakes was shipped. The contention is that the court erred in admitting parol testimony to prove the shipment. The question in issue was whether the stakes had been delivered to defendant on the car and the number thereof, not the contents of the bill of lading. The best and secondary evidence rules are not applicable to the admissibility of evidence on that issue. The bill of lading was a contract between the defendant as shipper and the railroad company as carrier and the plaintiffs were not parties to that contract. If the controversy were between the shipper and the carrier, the rule contended for might be applicable. Appellant relies upon the provisions of sections 1937 and 1938 of the Code of Civil Procedure, relating to proof of the contents of writings. As stated, there was no attempt to prove the contents of the bill of lading but the number of stakes shipped and the sections relied on have no application to the question.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.