[Civ. No. 20588. First Dist., Div. One. Oct. 22, 1963.]

ADA DOROTHY LARSON, Plaintiff and Appellant, v. RAY VERNON SOLBAKKEN, Defendant and Respondent.

412

Dorsey Redland and D. E. Cavileer for Plaintiff and Appellant.

Bronson, Bronson & McKinnon and Ernest M. Thayer for Defendant and Respondent.

MOLINARI, J.—This is an appeal by plaintiff from a judgment after jury trial for defendant in an action for damages for personal injuries arising out of a collision between two automobiles under the following circumstances:

Defendant was driving his automobile going north on United States Highway No. 101, in the County of Sonoma, on June 3, 1959, at about 5:35 p.m. The said highway in the area of the collision, which is the subject of this action, is a two-lane highway 20 feet in width. As defendant rounded a curve in the highway he observed plaintiff's vehicle in front of him proceeding in the same direction he was travelling.[1] The highway proceeds in a straight direction for approximately 1,500 feet after the curve. It was on this straight stretch of highway that the subject collision occurred. De-

---

[1]The record does not disclose the distance between the two vehicles at this point.

fendant accelerated his automobile and turned from the right lane into the left lane, intending to pass plaintiff's vehicle. Approximately 100 feet from the point of ultimate impact between the vehicles, plaintiff turned into the left lane, intending to make a left turn into the driveway of her home on the west side of the highway. Defendant applied the brakes of his car, which skidded and struck plaintiff's vehicle. The point of impact was approximately 450 feet from the curve aforementioned, the collision occurring in the left lane, adjacent to the shoulder of the highway, and just south of plaintiff's driveway. The right front of defendant's automobile struck the left rear fender and taillight of plaintiff's car, which rolled approximately 150 feet after the impact because, as plaintiff testified, she "couldn't find the brakes;..." Defendant's vehicle moved from 10 to 15 feet straight forward after the impact.

Defendant testified that at no time did his speed exceed 55 miles per hour. Highway Patrol Officer Gottschalk testified that in his opinion the maximum safe speed at the general location of the accident was 55 miles per hour. The officer testified further that defendant told him at the scene of the accident that he had been travelling at a speed of 70 miles per hour prior to the accident. Plaintiff also testified that defendant had stated to her at the scene that he had been driving his vehicle at 70 miles per hour. Pearl Dukes, a friend of defendant and a passenger sitting in the front seat of the car, testified that, because she was nervous at high speeds, she had been watching the speedometer of defendant's car just before the accident and that defendant had not exceeded 55 miles per hour. With regard to the speed of plaintiff's automobile, there was evidence that as she turned from the north-bound lane into the south-bound lane she was travelling about 25-30 miles per hour, and that thereafter she slowed to about 15 miles per hour.

Officer Gottschalk testified that defendant's car laid down 114 feet of skid marks which started in the north-bound lane. These marks were identified by the officer on photographs of the locale taken 15 days after the accident. Defendant denied that these were his skid marks, and testified that the skid marks made by his car were all in the left lane and that they measured from 82 to 86 feet. Defendant testified that he and another officer had paced off the skid marks at the scene of the accident. It was also his testimony that after his vehicle

started to skid he kept it in a straight course because he had no indication as to what plaintiff was going to do.

Defendant also testified that he had turned from the right lane into the left lane at a point some 200 feet before he applied his brakes and started skidding. In this regard, Mrs. Dukes testified that defendant had turned into the left lane a considerable distance before plaintiff made her turn from the right lane to the left lane. There was also testimony by defendant and Mrs. Dukes that they saw no light at all on the rear of plaintiff's vehicle prior to the collision, and that plaintiff gave no signal of any kind. Plaintiff, on the other hand, testified that she had actuated her left turn blinker before starting to turn. Another witness, a neighbor of plaintiff, testified that she had observed that the turn signal was working as plaintiff was turning into her driveway.

It is apparent from the foregoing narrative that there were substantial conflicts in the evidence, the resolution of which was for the trier of fact. █ It is an elementary rule that, where opposing factual inferences may reasonably be drawn from the evidence, the inference drawn by the jury may not be disturbed by an appellate tribunal. (*Thayer* v. *Pacific Elec. Ry. Co.*, 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56].) Plaintiff does not take umbrage at this rule and its applicability in the present case, but claims that the trial court committed several instances of error, the cumulative effect of which seriously prejudiced the presentation of her case so as to warrant a reversal. These assignments of alleged error we shall now proceed to discuss.

*Defendant's Knowledge and Intent at Time of Accident*

██ ██ After the jury was impaneled in the present case, counsel for both parties repaired to the trial judge's chambers where the following proceedings and colloquy between the court and counsel took place: "THE COURT: Do you want to make a statement, then, for the record? MR. HAWKINSON: Yes. May the record show that in a conference in chambers, the defendant requested a ruling that the defendant's references to insurance following the accident are irrelevant and improper evidence; and that was overruled? THE COURT: Yes. MR. HAWKINSON: And may the second request, that the defendant's statement to the plaintiff after the accident about a 'near miss' previously is at this junction ruled irrelevant? THE COURT: Yes; and that the plaintiff will be instructed—The plaintiff's attorney is instructed to instruct the plaintiff not to volunteer it. MR. CAVILEER: Yes,

Judge, I certainly shall do so. However, while we are talking on the subject: I didn't know this was going to come up; Counsel didn't mention it before. He has a copy of Mr. Solbakken's deposition, and I would like to read, just for the record, Your Honor, and Your Honor may reconsider the most recent ruling in the light of this. This is my deposing Mr. Solbakken: 'Q. You remember that at the scene of the collision and in Mrs. Larson's presence mentioning a previous situation where you had almost had an accident under similar circumstances? A. Yes. I mentioned that to somebody. I don't remember mentioning it to Mrs. Larson. Q. Did that take place near Cloverdale? A. No. Near Hopland. Q. It was the same general type of situation? A. Almost. There were two cars, a pickup and a big truck ahead of it, and I had a clear road ahead, and I started to pass. Just when I got opposite the pickup, this fellow here decided — there was a kind of a roadhouse or something to the left, a big shoulder, so he gave about a 50-foot signal to turn left when I was already opposite this pickup, right behind, which was right behind him. So I blew the horn then, and — I blew the horn, and I kept moving over to my left. So he seen me quick enough, so he hesitated enough so I got around him to the left and got back on the right-hand side of the road. That was just the time before, about nine or ten days.' That is page 60 of Mr. Solbakken's deposition. THE COURT: That wouldn't change my ruling, Mr. Cavileer. MR. CAVILEER: All right. THE COURT: That wouldn't change my thinking on it.''

Plaintiff claims that the exclusion of defendant's statement made at the scene of the collision constitutes prejudicial error.[2] It is plaintiff's contention that this statement was

---

[2] In her briefs plaintiff asserts that the comment made by defendant was '' ' ''I made it that time.'' ' '' This does not appear in the reporter's transcript, but is apparently taken from plaintiff's deposition. Such reference appears only in the clerk's transcript in connection with a declaration by plaintiff's attorney in support of a motion for new trial. In said declaration, the declarant states that during the discussion in chambers relative to admissibility of said statement he read from plaintiff's deposition, in response to defendant's objection, the following excerpt: '' 'Q. What did he say? A. Well, he just said that he tried to pass me and he was going at seventy or seventy-five. Q. Do you remember his saying that to you? A. He also said that he had an accident similar to that. I think he said it was either Cloverdale or Hopland. He said he made it that time. That's all I recall now. Q. He said he had an

relevant to demonstrate defendant's knowledge of a dangerous situation. The gist of her argument is that defendant's comment concerning a prior similiar experience amounts to an acknowledgment of his awareness and intention immediately preceding the collision. Plaintiff argues that the said awareness consisted of defendant's knowledge of the danger involved in passing a vehicle known to be making a turning maneuver, and his condition of mind was manifested in the attempt to pass with knowledge of plaintiff's intention to turn.[3] Plaintiff therefore maintains that if the jury had been afforded the benefit of the statement in question it could properly draw an inference that defendant intended to pass plaintiff's automobile knowing that she was about to make a left turn. This inference, says plaintiff, could then have been considered and weighed by the jury as against defendant's testimony that he was surprised by plaintiff's left turn.

■ The state of mind of a person is a fact to be proved like any other fact when it is relevant to an issue in the case; and when knowledge of a fact has important bearing upon the issues, evidence is admissible which relates to the question of the existence or nonexistence of such knowledge, (*Cope* v. *Davison,* 30 Cal.2d 193, 200 [180 P.2d 873, 171 A.L.R. 667]; *Oil Workers Intl. Union* v. *Superior Court,* 103 Cal.App.2d 512, 532-533 [230 P.2d 71]; *Roberts* v. *Patterson,* 170 Cal.App.2d 661, 665 [339 P.2d 236].) ■ Accordingly, whenever the motive or intent with which an act was done is relevant, or whenever the knowledge a person may have had is material to an issue, a wide range of proof is allowed. (*Cope* v. *Davison, supra,* p. 200; *Oil Workers Intl. Union* v. *Superior Court, supra,* p. 533.) ■ Such state of mind or

accident? A. He made it. He said he had done the same thing. He tried to pass a truck that was turning in and he said, ''I made it that time.'' ' ''

It is apparent that plaintiff is now seeking to include in the record testimony on the part of plaintiff which might serve for impeachment purposes or to establish an admission on the part of defendant. We, of course, may only consider what is contained in the reporter's transcript, i.e., the admissibility of the statement defendant admitted he made at the scene of the accident. In her closing brief plaintiff for the first time refers to the statement as ''Defendant's res gestae statement....'' This reference is obviously made with ''tongue in cheek'' as no contention is made that the spontaneous exclamation doctrine is applicable to the utterance in question.

[3] At oral argument plaintiff's counsel referred to defendant's state of mind as indicative of an intent to ''bull his way'' around plaintiff's car as he had on the prior occasion when he passed the truck.

knowledge may, therefore, be evidenced by the affirmative statement or admission of the possessor of it, or by his conduct. (*Hastings* v. *Serleto*, 61 Cal.App.2d 672, 680-681 [143 P.2d 956]; *Oil Workers Intl. Union* v. *Superior Court, supra,* at p. 533.) These principles have been applied in negligence cases, and particularly to the operation of motor vehicles. ▮ Thus, the mental attitude and knowledge of the probable consequences of a driver's conduct, where relevant and when confined to his state of mind prior to and contemporaneously with an accident, have been held to be admissible. (*Anderson* v. *Newkirch,* 101 Cal.App.2d 171, 179 [225 P.2d 247]; *Hastings* v. *Serleto, supra,* pp. 680-681; *Cope* v. *Davison, supra,* pp. 200-202; *Rhoads* v. *Studley,* 15 Cal.App.2d 726, 729 [59 P.2d 1082].) Among the cases which have applied the principle are: *Hastings* v. *Serleto, supra* (knowledge of narrow, winding road); *Anderson* v. *Newkirch, supra* (knowledge of speed limit on bridge and probability of an accident if speed limit was exceeded); *Perotti* v. *Sampson,* 163 Cal.App. 2d 280 [329 P.2d 310] (testimony tending to show decedent was emotionally upset when he crossed the highway); *Rhoads* v. *Studley, supra* (statement by driver that he did not want anyone to tell him how to drive his car).

The problem presented by the case at bench is one of relevancy. The meaning of relevancy is stated thusly by Witkin in his work entitled California Evidence in section 111, on page 133: "(c) *Relevancy.* In its more precise sense, relevancy is concerned with the probative quality of the evidence offered. Relevant evidence is defined as 'evidence having any tendency in reason to prove any material fact.' ... ['Relevancy, as the word itself indicates, is not an inherent characteristic of any item of evidence but exists as a relation between an item of evidence and a proposition sought to be proved']; ... ['Relevancy, as employed by judges and lawyers, is the tendency of the evidence to establish a material proposition']; ... ['Evidence is relevant not only when it tends to prove or disprove the precise fact in issue, but when it tends to establish a fact from which the existence or nonexistence of the fact in issue can be directly inferred']; ..." And see Code Civ. Proc., § 1868[4].) The concept of relevancy

---

[4] § 1868 provides: "Evidence must correspond with the substance of the material allegations, and be relevant to the question in dispute. Collateral questions must therefore be avoided. It is, however, within the discretion of the court to permit inquiry into collateral fact, when such

has been a subject of considerable discussion and review by legal writers and judicial decisions. From all that has been said and written, certain fundamental principles can be gleaned. These are: (1) that all relevant evidence is admissible unless some specific rule forbids or unless excluded for some special reason[5] (*People* v. *Jones,* 42 Cal.2d 219, 222 [266 P.2d 38]; Witkin, California Evidence, § 112, p. 134; 1 Wigmore, Evidence, § 10, p. 293; McCormick, Evidence, § 151, p. 314); (2) that " '[n]o precise or universal test of relevancy is furnished by the law,' " but the question in each case is to be determined " 'according to the teachings of reason and judicial experience' " (*Moody* v. *Peirano,* 4 Cal. App. 411, 418 [88 P. 380]; Witkin, California Evidence, § 113, pp. 135-136); and (3) that a wide discretion is left to the trial judge, which discretion will not be disturbed unless there is a clear showing of abuse thereof. (*Moody* v. *Peirano, supra,* p. 418; *Adkins* v. *Brett,* 184 Cal. 252, 258 [193 P. 251]; *McGuire* v. *Navarro,* 165 Cal.App.2d 661, 664 [332 P.2d 361]; McCormick, Evidence, § 152, pp. 315-321.)

██ ██ In the present case defendant's mental attitude and knowledge of the probable consequences of the manner in which he was operating his automobile prior to or contemporaneously with the accident were proper subjects of inquiry. It does not appear, however, that this was the purpose for which the statement in question was offered. The record does not disclose that any mention was made to the trial court that the statement was being offered for the purpose of showing defendant's condition of mind prior to or simultaneously with the accident; nor was any "offer of proof" made disclosing what plaintiff intended to prove by the statement. The purpose, relevancy and materiality of defendant's post-accident statement were not clearly disclosed to the trial court so as to give it an opportunity to correct its ruling. The failure to make an offer of proof, where necessary, precludes consideration of the error on appeal. (*Marshall* v. *Hancock,* 80 Cal. 82, 84 [22 P. 61]; Witkin, California Evidence, § 713, p. 744; and see *Warren* v. *Pacific Intermountain Express Co.,*

fact is directly connected with the question in dispute, and is essential to its proper determination, or when it affects the credibility of a witness."

[5]Relevant evidence may be excluded for policy reasons. As stated by Witkin in Cal. Evidence, § 112, p. 134: "The general principle of admissibility of relevant evidence is subject to a number of exceptions, based on 'counterbalancing factors' of 'extrinsic policy.' The most important are (1) undue prejudice, (2) unfair surprise, (3) confusion of issues, and (4) undue consumption of time." (Citing McCormick, pp. 314, 319; 1 Wigmore, § 29a.)

183 Cal.App.2d 155, 162 [6 Cal.Rptr. 824].) ▮▮▮ The proffered evidence, in the manner in which it was offered, had all of the earmarks of an attempt to show a prior incident as evidence of negligence in the instant situation.[6] ▮▮▮ ▮▮▮ Evidence of the actions and conduct of a party, particularly as to the rate of speed and method of driving an automobile just before a collision occurs, is admissible if not too remote. (*Traynor* v. *McGilvray*, 54 Cal.App. 31, 33-34 [200 P.2d 1056]; *Ritchey* v. *Watson*, 204 Cal. 387, 390 [268 P. 345]; *Mathews* v. *Dudley*, 212 Cal. 58, 59-60 [297 p. 544]; *Jennings* v. *Arata*, 83 Cal.App.2d 143, 146-147 [188 P.2d 298].) A perusal of the cases cited in support of the foregoing principle discloses that the conduct in question occurred within a short time prior to the accident and in close proximity thereto. In *Gritsch* v. *Pickwick Stages System*, 27 Cal.App.2d 494 [81 P.2d 257], it was held that evidence of speed at a point one mile from the collision was too remote. Likewise, in *McGuire* v. *Navarro, supra*, 165 Cal.App.2d 661, the reviewing court upheld the refusal of the trial court to allow testimony that at a point between one and one-half to two miles east of the point of impact the defendant, while overtaking and passing the witness Melbourn cut sharply back to the right causing Melbourn and the car that was in front of him to apply their brakes in order to avoid a collision at that time. In *Blackford* v. *Beckworth*, 90 Cal.App. 37 [265 P. 514], the lower court admitted testimony of a driver's habit six months prior to a collision while travelling eight miles distant from the place of the accident. The admission of this testimony was held to be error. It should be noted that in all of the cases discussing this principle, it is clearly indicated that the question of remoteness is one which rests so largely in the discretion of the trial court that no positive rule can be laid down, and for that reason the ruling of the trial judge as to the admission or rejection of evidence of this character will not be disturbed except upon a clear showing of an abuse of such discretion. (See *Traynor* v. *McGilvray, supra*, pp. 33-34; and *McGuire* v. *Navarro, supra*, p. 664.) ▮▮▮ In the case at

---

[6]The pertinent questions asked defendant in his deposition were: " 'Q. You remember that at the scene of the collision and in Mrs. Larson's presence mentioning a previous situation where you had almost had an accident under similar circumstances?' " " 'Q. It was the same general type of situation?' " To the first question defendant answered in the affirmative; to the second he answered "Almost" and then proceeded to describe the occurrence.

bench the incident mentioned in the statement in question occurred some 10 days before the accident. In the light of the principles hereinabove discussed, the evidence was too remote and its rejection clearly within the trial judge's discretion.

Plaintiff contends, however, that her purpose was not to show the prior incident as probative of defendant's negligence but to show the defendant's condition of mind and knowledge of the probable consequences of his manner of driving immediately prior to and contemporaneously with the accident. She accordingly asserts the rule that if evidence is admissible for any purpose it must be received, even though it may be highly improper for another purpose, citing *Daggett* v. *Atchison, T. & S. F. Ry. Co.*, 48 Cal.2d 655, 665 [313 P.2d 557], and *Adkins* v. *Brett, supra*, 184 Cal. 252 256, in support thereof. The rule relied upon by plaintiff, as declared by these cases, is that where evidence may be material and relevant for one purpose and inadmissible for another purpose, it may be admitted, but only for the proper purpose, and under instructions of the court limiting it to the proper purpose.[7] (See Witkin, California Evidence, § 115, p. 138, and cases cited therein.) Consonant with this rule, the party offering evidence should state the proper purpose; and if his only expressed theory in offering it is an improper one, the court may exclude the evidence. (Witkin, Cal. Evidence, *supra; Estate of Smead*, 219 Cal. 572, 576-577 [28 P.2d 348]; *Estate of Parkinson*, 190 Cal. 475, 476 [213 P. 259]; *Roberts* v. *Roberts*, 168 Cal. 307, 309 [142 P. 1080, Ann.Cas. 1916A 886].)

In the instant case it is clear from the record that the theory upon which the statement was offered was an improper one and that the proper purpose was not stated or made known to the court. Not only was the proffered evidence too remote as an incident probative of negligence, but it related to a state of mind *subsequent* to the accident. There is nothing in the offered evidence which indicates defendant's condition of mind prior to or contemporaneous with the accident. What plaintiff is now seeking to establish, in retrospect, is the condition of defendant's mind at or prior

---

[7]It should be noted that where the evidence is admissible for a limited purpose only, it is not the duty of the trial judge to instruct the jury as to such purpose unless requested to do so, and if the adverse party fails to make such request, there is no reversible error in the unlimited admission. (*Daggett* v. *Atchison, T. & S. F. Ry. Co.*, 48 Cal.2d 655, 665-666 [313 P.2d 557]; *Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 810 [117 P.2d 841].)

to the accident by what his state of mind was subsequent thereto without any attempt to lay a foundation for or to establish the condition of mind prior to or simultaneous with the accident. It was not error, therefore, for the trial court to refuse admission of the statement in question for the apparent specific purpose for which it was offered, even though it might have been admissable for some other purpose not indicated in the proffer. (*Roberts* v. *Roberts, supra,* p. 309; *Estate of Smead, supra,* pp. 576-577.)

*Plaintiff's Requested Instruction re Rear-End Collision*

 The court below refused an instruction submitted by plaintiff which read as follows: "The mere fact that a driver runs down the vehicle ahead of him furnishes some evidence that either he was travelling at too high a rate of speed or that he was following too closely the machine ahead of him." Plaintiff claims that it was prejudicial error for the court to refuse this instruction because, in view of the trial court's duty to instruct on every theory of the case finding support in the evidence (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [225 P.2d 785]; *Leming* v. *Oilfields Trucking Co.,* 44 Cal.2d 343, 352 [282 P.2d 23, 51 A.L.R. 2d 107]), she was entitled to this instruction on the basis of the theory advanced by her, and supported in the evidence, that the collision in question was of the "rear-end type" caused by excessive speed or following too closely.

 The principle of law upon which plaintiff relies has been declared by cases in this state and is to the effect that a collision in which a following motorist collides with the rear end of a vehicle ahead is some evidence of negligence on the part of the following motorist. (See *Cartmill* v. *Arden Farms Co.,* 83 Cal.App.2d 787, 789 [189 P.2d 739]; *Banes* v. *Dunger,* 181 Cal.App.2d 276, 280 [5 Cal.Rptr. 278]; *O'Connor* v. *United Railroads,* 168 Cal. 43, 47 [141 P. 809]; *Gornstein* v. *Priver,* 64 Cal.App. 249, 255 [221 P. 396]; *Linde* v. *Emmick,* 16 Cal.App.2d 676, 682 [61 P.2d 338]; *Wright* v. *Ponitz,* 44 Cal.App.2d 215, 219 [112 P.2d 25]; *Shannon* v. *Thomas,* 57 Cal.App.2d 187, 194 [134 P.2d 522]; *Kramer* v. *Barnes,* 212 Cal.App.2d 440, 448-449 [27 Cal.Rptr. 895].)

The principle declared in these cases was first announced in this state by the *O'Connor* case and was thereafter followed by *Gornstein,* which couched the rule in substantially the same language as contained in plaintiff's proffered instruction. Both of these cases involved factual situations

where the following vehicle ran down the vehicle ahead proceeding in the same direction and in the same path or lane of travel.[8] *Gornstein*, while declaring that such running down furnishes *some* evidence that the following motorist was either travelling at too high rate of speed or was following too closely the vehicle ahead of him, was quick to point out that this conduct did not constitute negligence per se, but that whether the driver in the rear was negligent in colliding with the vehicle in front is essentially a question of fact and not of law and is dependent upon the circumstances surrounding the happening of the accident. (See *Elford* v. *Hiltabrand*, 63 Cal.App.2d 65, 74 [146 P.2d 510]; *Kramer* v. *Barnes*, *supra*, p. 448; *Donahue* v. *Mazzoli*, 27 Cal.App.2d 102, 105-106 [80 P.2d 743]; *Wright* v. *Ponitz*, *supra*, p. 219.)

*Cartmill* v. *Arden Farms Co., supra*, 83 Cal.App.2d 787, decided in 1948, involved a collision between a bicycle and a truck. There was no direct evidence as to how the accident happened. The rider of the bicycle had been proceeding on the right hand side of a street near the curb in a westerly direction. After the accident the damaged bicycle was found with its front part directly behind the left front wheel of the truck with its rear portion sticking out beyond the running board. The truck came to a stop on the north side of said street close to the curb and was headed west. There were black marks or skid marks on the highway beginning at a point 30 or 35 feet to the rear of the truck and about 6 or 7 feet from the north curb and proceeding at an angle to where the truck was stopped. There were also tire marks along the north curb for 10 or 12 feet. The reviewing court held that the position of the truck after the accident and the marks on the curb and pavement were sufficient evidence of the fact that the truck was proceeding in the same direction, thus furnishing some proof which would justify an inference of negligence on the part of the owner of the truck in the absence of any explanation. The rule here under discussion was there stated thusly: "[E]vidence that a moving vehicle has collided with another moving vehicle ahead of it furnishes at least some proof of negligence on the part of the driver of the colliding vehicle." (P. 789.)

[8]This situation was likewise presented in the following cases decided subsequent to *O'Connor* and *Gornstein*, to wit: *Linde* v. *Emmick*, *supra*; *Donahue* v. *Mazzoli*, 27 Cal.App.2d 102 [80 P.2d 743]; *Wright* v. *Ponitz* *supra*; *Shannon* v. *Thomas*, *supra*; *Kramer* v. *Barnes*, *supra*; *Banes* v. *Dunger*, *supra*.

In *Banes* v. *Dunger, supra,* 181 Cal.App.2d 276, decided in 1960, the situation presented was as follows: the plaintiffs' car was struck in the rear, while stopped in the left hand lane nearest the center white double line of a four-lane highway — two lanes in each direction — because of traffic conditions; the defendant Manuel brought her car to a stop behind that of the plaintiff wife; and the Manuel car was then struck by a truck driven by the defendant Dunger, causing the Manuel car to strike the plaintiffs' automobile. Manuel testified that she had changed from the right-hand lane to the inside lane about a block to one and one-half blocks from the point where the accident took place and that she had come to a gradual stop about one car length behind the plaintiffs' car where she remained for a period of from five to ten seconds before she was struck by the truck. Dunger testified that the plaintiffs' car was travelling about two to three car lengths in front of him, at approximately 22 miles per hour, when the Manuel car turned from the outside to the inside lane between his truck and the plaintiffs' car; that he slackened his speed, and that there wasn't any distance left for him to stop so he hit the Manuel car. A covenant not to sue having been executed as to Dunger, the action proceeded to trial as between the plaintiffs and Manuel. In reversing a judgment for Manuel, the appellate court held not only that there was an inference of negligence on the part of Manuel but also that the plaintiffs were entitled to the instruction proffered by them based on the theory of qualified res ipsa loquitur. The reviewing court also indicated that there was merit to the contention that it was error to refuse an instruction to the effect that a collision in which a following motorist collided with the rear end of a vehicle ahead is some evidence of negligence on the part of the following motorist.

In the case at bench plaintiff contends that the collision in question was a rear-end type of collision. Defendant, on the other hand, asserts that this was not a rear-end collision, but one resulting from plaintiff's left turn movement. Defendant argues that the rule hereinabove discussed applies only to rear-end collisions in which the driver of one vehicle has been following directly behind the other in the same lane of traffic and without making any attempt to pass. This is not an accurate statement of the rule in question. As we understand the rule from a reading of the cases, it is applicable where a moving vehicle collides with another vehicle *moving ahead of it in the same direction,* and is not subject to the limitation

that the two vehicles must necessarily be in the same lane of traffic.

The crux of the inquiry in the present case is whether the collision was a rear-end collision in the sense declared by the cases which have applied the rule in question. Although plaintiff's car was struck in the left rear, the record discloses that the accident occurred while plaintiff was in the process of making a left turn into her driveway. Plaintiff testified that when she reached a point approximately 70 feet from her driveway, which was located on the left side of the highway, she turned to her right with her car partially on the shoulder in order to allow vehicles behind her to pass; that at that time she looked in her rear view mirror for any passing cars; that she saw a car far back in the distance; that she proceeded to make a turn from this position;[9] that she gave a left turn blinker signal; and that as she was about to enter her driveway her vehicle was struck in the left rear. It is apparent from the record that at the time of the collision the two vehicles were not travelling in the same direction, i.e., defendant's car was going in a general northerly direction, and plaintiff's vehicle was travelling in a general westerly direction. We are satisfied that under the facts and circumstances the rule in question was not applicable. It should be noted, moreover, that plaintiff's theory throughout the case was that the collision occurred while she was in the process of making a proper and legal left-hand turn. This is not only demonstrated by the evidence presented by plaintiff, but was also announced to the jury in plaintiff's opening statement.

We are satisfied, moreover, that the proposed instruction would be improper even in a case where the rear-end inference of negligence rule is applicable. The proffered instruction not only contains the objectionable language that indicates to the jury that defendant had "run down" plaintiff, but it also conveys the suggestion that he was either

---

[9]Plaintiff referred to her turn on several occasions as a "swing": "... I slowed down in order to make the swing there into the driveway." "I think I turned, as near as I could, to the shoulder in order to make my correct swing into the driveway." "... I knew I was safe to make my swing into the driveway." "Well, when I made my swing into the driveway, I had to go into the left lane." "Well, I usually made a wide swing for the reason that there is a culvert under that driveway, and it has a concrete — rises on each side of the driveway, and I always try to make a good straight swing in so I — so I will be in the center of the driveway."

travelling at too high a rate of speed or that he was following too closely the vehicle ahead of him. The language of the instruction is taken from *Gornstein* v. *Priver, supra,* 64 Cal. App. 249. The court was not there discussing the propriety of an instruction as the case was tried without a jury. The language in question was in relation to the appellate court's observation that the driver of a vehicle following another cannot, under ordinary circumstances, run down a vehicle proceeding in the same direction without having been negligent in the operation of his own vehicle, unless it appears that the collision was due to the negligent conduct of the driver of the other vehicle. It then mentioned the evidentiary effect of the factual elements of speed and close proximity in a rear-end accident. While the opinion in *Gornstein* appears to restrict the rule to these two elements, it is obvious that other factual elements may give rise to an inference of negligence in a rear-end collision. A driver following another vehicle may not be driving at an unreasonable speed and he may not be following too closely, yet an inference of negligence may nevertheless be imparted to the driver. He may have been inattentive or his brakes may have been defective, or any number of different situations may be in order. (See *Lowenthal* v. *Mortimer,* 125 Cal.App.2d 636, 638 [270 P.2d 942].) ▆▆▆ Accordingly, where the rule we have been discussing is applicable in a given case, a proper instruction should be couched either in language to the effect that where a moving vehicle has collided with another moving vehicle ahead proceeding in the same direction an inference of negligence arises in the absence of any explanation for the collision (*Cartmill* v. *Arden Farms Co., supra,* 83 Cal.App.2d 787, 789; *Donahue* v. *Mazzoli, supra,* 27 Cal.App.2d 102, 105-106; *Kramer* v. *Barnes, supra,* 212 Cal.App.2d 440, 447-448), or, in terms of an appropriate res ipsa loquitur instruction. (*Banes* v. *Dunger, supra,* 181 Cal.App.2d 276, 280-282.)

### *The Rereading of Instructions After Submission*

▆▆▆ In its initial charge, the court had, at plaintiff's request, instructed upon the doctrine of last clear chance. Prior to the return of the verdict, the jury reentered the courtroom and the foreman stated that the jury was not clear on the law covering the situation where there is a question of negligence on both the part of plaintiff and defendant. The court then reread to the jury five instructions which defined generally negligence and contributory negligence. After reading these instructions the trial court made the following

query: "Does that cover what you had in mind?" The foreman then responded: "That's it. Yes, Your Honor." The crux of plaintiff's contention here is that it was error for the court not to reread the instruction dealing with last clear chance. An almost identical situation occurred in *People* v. *Yokum*, 145 Cal.App.2d 245 [302 P.2d 406]. There, after the jury had retired to deliberate, it returned to the court and requested the rereading of instructions defining the various offenses included in the charge. Thereupon the court read certain instructions previously given. Then the jury made a request for further instructions, whereupon the court stated it would read all the instructions previously given. The trial court omitted, however, on the rereading, several instructions given to the jury when first charged. When the court completed its rereading a juror, who evidently was the foreman of the jury and who had made the request for further instructions, stated: " 'I think that covers it.' " (P. 256.) No request for the rereading of the omitted instructions was made by the appellant's counsel. The reviewing court held that the failure of the court to reread said instructions was not error. The same conclusion has been reached in other cases involving similar situations. (See *People* v. *Malone*, 173 Cal.App.2d 234, 243-244 [343 P.2d 333]; *People* v. *Cathey*, 186 Cal.App.2d 217, 221-222 [8 Cal.Rptr. 694]; *People* v. *Hood*, 199 Cal.App.2d 44, 47 [18 Cal.Rptr. 351]; *People* v. *Lee Gow*, 38 Cal.App. 248, 250-251 [175 P. 917]; *People* v. *Finali*, 31 Cal.App. 479, 489 [160 P. 850]; *McGuire* v. *W. A. Thompson Distributing Co.*, 215 Cal.App.2d 356, 365-366 [30 Cal.Rptr. 113]; *People* v. *Smith*, 3 Cal.App. 62, 67-68 [84 P. 449].) Moreover, in the record of the discourse during the time the jurors asked for further instructions in the case at bench, there does not appear to be any suggestion or request from plaintiff's counsel that the last clear chance instruction, or any other instructions on the subject indicated by the jury, be read; nor was any objection made or exception taken to the action of the court. Under the circumstances we fail to see how plaintiff can now complain, nor can it be said that the trial court committed prejudicial error. (See *Demangos* v. *Cannon*, 187 Cal.App.2d 624, 630 [10 Cal.Rptr. 24]; and see *People* v. *Lee Gow, supra*, at pp. 250-251; *People* v. *Hood, supra*, at p. 47; *People* v. *Malone, supra*, at pp. 243-244; *People* v. *Yokum, supra*, at p. 256.)

*Was it Prejudicial Error to Grant a Continuance?*

On the afternoon of the fourth day of trial, a

Friday, defendant moved for a continuance until the following Monday in order that he might call a witness who would be returning to the city that weekend. Plaintiff objected on the grounds that there had been no showing of diligence and that the proposed evidence would, at best, be cumulative. The court observed that there had been testimony concerning the whereabouts of this witness and defendant's efforts to locate and present her, and then granted the motion. Thereafter, the court explained to the jury that everyone thought the witness would be available earlier, but that the case would necessarily go over to the following Monday anyway, and that therefore they would hear from this witness at that time. Plaintiff now argues that the granting of this continuance constituted error in that defendant submitted no affidavit showing materiality or diligence and that the error was prejudicial because the granting of the continuance indicated to the jury that the court considered the witness' testimony to be important.

It should be noted that we are dealing with a procedural ruling concerning a matter over which the trial court has wide discretion. The granting or refusal of a continuance is a matter of discretion with the trial court and its ruling will not be disturbed unless a clear abuse of that discretion is shown. (*Cohen* v. *Herbert*, 186 Cal.App.2d 488, 493 [8 Cal.Rptr. 922]; *Schlothan* v. *Rusalem*, 41 Cal.2d 414, 417 [260 P.2d 68].) The trial judge must exercise such discretion with due regard to the interests of all involved, and he should exercise liberality in the granting of a continuance to obtain the presence of material evidence and to prevent miscarriages of justice. (*Cohen* v. *Herbert, supra,* pp. 493-496.) When an attack is made on a procedural discretionary order a reviewing court may deduce that the order was not made in the exercise of sound discretion if the record indicates that such order resulted in probable or possible prejudice to a party. (*County of San Diego* v. *Bank of America,* 135 Cal.App.2d 143, 148 [286 P.2d 880].) In the instant case the record does not disclose that any prejudice resulted to plaintiff by the continuance. It appears that the case could not in any event be concluded on Friday[10] but that it would in any event have to be continued

---

[10]The record discloses that after the motion for a continuance was granted at approximately 2 p.m., plaintiff was thereafter permitted to call a rebuttal witness whose testimony did not conclude until 2:20 p.m. The trial court then observed that it was too late in any event to submit

to the following Monday, the day on which the witness Dukes was to be called.[11] Moreover, the presence of the witness Dukes had been discussed during the trial in the presence of the jury, and on cross-examination of defendant by plaintiff's counsel he asked a number of questions concerning the whereabouts of the witness Dukes, who was an eyewitness to the accident. We think the trial court acted properly. ▉ It not only exercised its discretion in making an eyewitness, who had been absent from the state, available to testify, but it allayed by such presence any inference or notion that the jury might have had that the witness was being withheld from the jury.

▉ Plaintiff urges that Code of Civil Procedure section 595 requires that a motion for continuance be supported by an affidavit showing the materiality of the evidence and the due diligence used in procuring it. While a motion for a continuance should be supported by an affidavit stating the facts and circumstances for postponement, this requirement is not jurisdictional and may be excused by the trial court in its discretion. (*Cohen* v. *Herbert, supra,* 186 Cal.App.2d 488, 493; *Winkie* v. *Turlock Irr. Dist.,* 24 Cal.App.2d 1, 6 [74 P.2d 302].) Furthermore, a showing for a continuance may not only be made by affidavit but by other proof pursuant to a motion in open court. (*Winkie* v. *Turlock Irr. Dist., supra,* p. 6; *Bassi* v. *Walden,* 64 Cal.App. 764 [222 P. 866].) ▉ We are accordingly satisfied that the trial court did not abuse its discretion in excusing the affidavit and in granting the continuance upon the showing made.

In view of our conclusions that no prejudicial error occurred which would affect the liability phase of the case, we need not discuss the other assignment of claimed error regarding the instruction on "previously existing disability" as this would bear on the damages aspect of the case with which we need not concern ourselves in view of the jury's conclusion on the issue of liability.

The judgment is affirmed.

Bray, P. J., and Sullivan, J. concurred.

---

the case for the jury's deliberations. The court noted that the arguments of counsel and its instructions would require the case to go over to Monday.

[11]The trial was concluded on this day. In addition to the witness Dukes, a rebuttal witness testified on behalf of plaintiff pursuant to a subpoena issued for that day.