BALDOCK, Circuit Judge,
dissenting as to Part III.A.
The Court first decides the district court properly deemed irrelevant evidence that Shockey did not possess a valid driver’s licence at the time of his accident. See Court’s Op. at 1217-18 (citing Oklahoma law). The Court then concludes “Evidence that Shockey was fifteen years old, combined with evidence that he was not permitted to drive the car, is the equivalent of evidence that he did not possess a valid driver’s license,” and, therefore, inadmissible. Id. at 1217-18.[1] The Court de *1223 dares such evidence inadmissible because “[wjhether ... Shockey had permission to drive the car is not itself probative of whether he used due care in driving across the ... crossing....” Id I disagree.
The Court acknowledges “[t]he issue of Shockey’s contributory negligence was a central aspect of the trial.” Id at 1218. In determining the contributory negligence of a minor, the law in Oklahoma has long been that “factors, such as intelligence, experience, discretion, previous training, maturity, alertness, and the nature of the danger encountered ... are to be taken into consideration as well as the age of the child.” Davis v. Bailey, 162 Okla. 86, 19 P.2d 147, 148 (1933). Of course, Union Pacific sought to introduce Shockey’s lack of permission to drive to create an inference that he exercised something less than due care in operating his vehicle. See Larson v. Solbakken, 221 Cal.App.2d 410, 420, 34 Cal.Rptr. 450 (1963) (“[D]efendant’s mental attitude and knowledge of the probable consequences of the manner in which he was operating his automobile prior to or contemporaneously with the accident were proper subjects of inquiry.”). Evidence of Shockey’s maturity and experience, as well as the testimony that Shockey’s mother told him “not to be driving” (for whatever reason), bore upon his state of mind at the time of the accident and were undoubtedly relevant to apportioning responsibility in this case. “[T]he mandate of comparative responsibility is that the fact finder should roughly compare the relative responsibility of all actors who contributed to an injury. It is difficult to perform that task without taking into account evidence that reflects on each actor’s culpability.” Restatement (Third) of Torts: Apportionment of Liability § 8, at 90 (2000) (Reporters’ Note) (hereinafter Restatement).
Section 8 of the Restatement provides that “the nature of the person’s risk-creating conduct, including any awareness or indifference with respect to the risks created by the conduct” is material to allocating responsibility among the parties. Comment c to § 8 explains that the nature of a party’s risk creating conduct encompasses “each person’s awareness, intent, or indifference with respect to the risks.” Id. § 8 cmt. c. Comment c concludes that factors bearing upon a party’s state of mind at the time of the accident “may be considered for apportioning responsibility even if they are not themselves causally connected to the plaintiffs injury, as long as the risk-creating conduct-to which they refer is causally connected to the injury.” Id. (emphasis added).
Evidence that Shockey’s mother told him not to drive and that he knew he lacked permission to do so certainly bear on the risk Shockey undertook in disobeying her. And clearly that risk-creating conduct, i.e., Shockey’s unauthorized driving, is causally connected to the accident, thereby rendering evidence as to his state of mind relevant and admissible under Fed.R.Evid. 401. While the admissibility of such evidence might be challenged as unduly prejudicial under Fed.R.Evid. 403, *1224 that question is not before us. Accordingly, I would affirm the judgment of the district court in all respects.

. On cross-examination, Shockey’s mother testified as follows:
Q. How old was Derek at the time of the accident?
A. He was 15.
Q. He had just turned 15 two or three months ago, in June I think, the end of June?
A. Uh-huh.
Q. How did he get to school.
A. School bus.
Q. All right. Was he familiar with this crossing, ma'am?
A. Yes, he was.
Q. Did he — did the school bus use the crossing?
A. Yes it did.
Q. And I take it you all drove over it?
*1223 A. Yes.
Q. Y’all have been over that crossing, I guess, too many times to count?
A. Yes.
Q. And I assume you were both aware that trains came through there frequently?
A. Yes.
Q. Okay. You had not allowed Derek to drive; is that right?
A. No, I didn’t.
Q. Did you forbid him to drive?
A. Yes, I told him not to be driving.
Q. So, his driving that car that day was against your strict instructions; isn't that true, ma’am?
A. Yes.
Appellant’s App. at 2106.